**Robert KROPINSKI**

v.

**WORLD PLAN EXECUTIVE
COUNCIL—US, et al.,
Appellants.**

**Nos. 87–7033, 87–7060.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 10, 1987.
Decided Aug. 5, 1988.

---

Carter G. Phillips, with whom Rex E. Lee, Washington, D.C., was on the brief, for appellants.

Gerald F. Ragland, Jr., Philadelphia, Pa., for appellee.

Eugene D. Gulland and Sheldon E. Steinbach, Washington, D.C., were on the brief for amicus curiae American Council on Educ., urging reversal.

Before EDWARDS, SILBERMAN, and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Robert Kropinski brought claims of fraud, negligence, and intentional tort against World Plan Executive Council and Maharishi International University. Kropinski alleges that as a result of defendants' misrepresentations, he was induced to study and practice a method of meditation that has caused him financial, physical, and psychological harm. Defendants moved for summary judgment, which the trial court granted in part.

During the jury trial, Kropinski was allowed to introduce expert testimony that defendants' system of meditation involved the use of "thought reform." The jury found for Kropinski on the fraud and negligence claims. Defendants appeal the denial of summary judgment, the decision to allow Kropinski's expert to testify, and the judgment on the jury's verdict. We reverse in part and remand for a new trial.

## I. BACKGROUND

Robert Kropinski's first contact with the transcendental meditation ("TM") move-ment was at a free, introductory lecture in 1972. As a result of representations that the practice of TM would yield a variety of personal and societal benefits, such as improved mental and physical health and the advancement of world peace through harmonious personal relationship, Kropinski enrolled in and paid for a seven-hour introductory course. At the time, he was a twenty-two-year-old high school graduate, had a steady job, and took college courses at night.

During the ensuing seven years, Kropinski enrolled in a variety of more advanced courses (including instruction in "Sidhi," in which he would learn, among other things, to levitate or "fly"); worked a total of four years full time for TM organizations in the United States and abroad in exchange for further instruction, room and board, and nominal pay; spent several hours per day, over extended periods, in meditation; and, in 1976, became an instructor in TM techniques. Although he spent most of his time during these years with TM practitioners, he saw his family frequently. At no time was Kropinski's freedom of movement constrained.

During the period from 1980 through 1983, Kropinski lessened his involvement in TM activities. He no longer taught TM and took fewer courses. Finally, in the fall of 1983, he stopped practicing TM after being informed by Swami Ji, founder of the International Society for Divine Love, that TM was an incorrect form of meditation.

Kropinski filed this suit on September 9, 1985, in which he asserts three basic claims. The first lies in fraud: defendants fraudulently promised that the practice of TM would confer certain personal and societal benefits; as part of this fraudulent scheme, the defendants claimed that the benefits of TM were "scientifically confirmed." Complaint at ¶ 13. Second, as a result of defendants' negligent conduct in allowing him to persist in the practice of TM and Sidhi, he sustained psychological, physical, and emotional harm. *Id.* at ¶ 50. Third, he alleges that by teaching him TM, defendants intentionally caused him emotional distress. *Id.* at ¶ 53. He sought

damages for the tuition, the value of the services he provided the defendants' organizations while employed by them, and compensation for his injuries.

Defendants moved for summary judgment on all claims. They asserted that the facts alleged by Kropinski failed to state a cause of action for fraud, negligence, or intentional tort. They also asserted that as this diversity action is governed by District of Columbia law, Kropinski's claims were barred by the District's three-year statute of limitations. D.C.Code Ann. § 12–301(8) (1981).

The district court dismissed the claims concerning intentional tort and negligent infliction of emotional distress, which rulings Kropinski has not cross-appealed, but found the allegations and evidence sufficient to raise jury issues as to fraud and the negligent infliction of both physical and psychological injuries. The court also left the defendants' statute of limitations defense to the jury. Finally, the court ruled that Kropinski could present evidence that TM constituted a system of "thought reform" that changed its practitioners' world view, but only to prove the fraud and negligence claims. Memorandum on Summary Judgment, *John Doe v. Maharishi Mahesh Yogi, et al.*, 652 F.Supp. 203 (D.D.C.1986) ("Memorandum") (the plaintiff initially brought the suit using a pseudonym). Record Excerpts ("Rec.Ex.") at tab C.

At trial, Kropinski introduced expert testimony by Dr. Margaret Singer, a psychologist. Defendants objected that Dr. Singer's theories on thought reform were scientifically unsupported. Defendants also objected that her testimony was irrelevant and inflammatory. The trial court admitted the testimony.

The jury awarded Kropinski $137,890 in damages on the fraud and negligence claims, Rec.Ex. at tab C, and the court entered judgment on the verdict. *Id.* The court granted defendants' request for an additional thirty days to file post-judgment motions. Within the time allowed by the court, but after the ten-day time limit established by Federal Rule of Civil Procedure 50(b) for such a motion, the defend-

ants moved for judgment non obstante verdicto ("judgment n.o.v."). When defendants discovered that Federal Rule of Civil Procedure 6(b) would not permit the enlargement of the time limit established by Rule 50(b), the court dismissed their motion for judgment n.o.v.

Defendants ask this court to remand with instructions to direct a verdict for them based on either their motion for summary judgment or their untimely motion for judgment n.o.v., arguing (with respect to the latter) that they should not be prejudiced for having acted in reliance on the district court's mistaken extension of time within which to file motions. Brief for Appellants at 12 n. 22.

## II. Denial of Judgment N.O.V.

Rule 50(b) prohibits an appellate court from directing a verdict in favor of a party who fails to move for judgment n.o.v. following trial. *Jones v. Reliance Ins. Co.*, 607 F.2d 1 (D.C.Cir.1979). Because a district court may not consider untimely motions for judgment n.o.v., *Mickey v. Tremco Mfg. Co.*, 226 F.2d 956, 957 (7th Cir. 1955), we cannot act on defendants' motion.

Defendants argue that we nevertheless have the authority, under *Thompson v. INS*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964), to grant their request because of the "unique circumstances" of their case. In *Thompson*, the Supreme Court allowed an appeal to lie because of the "unique circumstances" of the appellant's deferral of the filing of his appeal in reliance on the district court's assurances that his post-trial motions were timely when, in fact, they were not. In this case, defendants claim a similar reliance on the district court's erroneous grant of additional time for the filing of post-trial motions. Therefore, they say, their delay in filing their motion for judgment n.o.v. should be excused.

Even assuming the "unique circumstances" doctrine remains valid and is applicable to this case, *cf.* discussion in *Houston v. Lack*, — U.S. —, 108 S.Ct. 2379, 2388, 101 L.Ed.2d 245 (1988) (Scalia, J., dissent-

ing); *Browder v. Director, Dep't of Corrections of Ill.*, 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 556 (1978), we would decline to apply it. As the decision to award a judgment n.o.v. lies within the province of the trial judge, we are reluctant to intrude into an area of judicial discretion that is generally exercised by that court. But more particularly, in *Thompson*, the doctrine was applied to save an appeal that would otherwise have been set aside. Here the appeal is not in jeopardy.

### III. THE DENIAL OF SUMMARY JUDGMENT

Defendants complain that the district court incorrectly denied summary judgment on the negligence claims, the fraud claim, and their statute of limitations defense. We conclude that the court erred in allowing one negligence claim and certain aspects of the fraud claim to go to trial; in all other respects, we affirm the district court.

### A. The Negligence Claims

■ The court allowed two negligence claims to be tried: negligent infliction of physical injury and negligent infliction of psychological injury. Kropinski asserted that he had suffered injuries to his foot, leg, and back as a result of his instructions "in the practice of 'flying,'" Complaint at ¶ 50(g), which apparently involved hopping on the floor with legs crossed in the lotus position. The trial court properly found that Kropinski alleged sufficient facts to raise a jury question on negligent infliction of physical injury.

■ With respect to his claims of negligently inflicted psychological injury, Kropinski alleged that the practice of TM resulted in a loss of memory, psychological trauma, a diminished ability to concentrate, and arrested maturation and development. Complaint at Count Two (Negligence) (incorporating ¶¶ 43, 45, & 47). In moving for summary judgment, defendants asserted that District of Columbia law prohibited recovery for psychological injuries that are not traceable to a physical injury, citing *Asuncion v. Columbia Hospital for Wom-*

*en*, 514 A.2d 1187, 1188–89 (D.C.1986). While the district court agreed that *Asuncion* precluded the claim for emotional injury under the present circumstances, it asserted, without explanation, that *Asuncion*'s requirement of a causal physical injury did not apply in the case of "permanent psychological injuries." Memorandum at 12–13.

*Asuncion* affirms that "in [the District of Columbia], 'there can be no recovery for negligently caused emotional distress, mental disturbance, or any consequences thereof, where there has been no accompanying physical injury.'" *Id.* at 1188. We see no basis in the quoted statement for the district court's distinction between emotional and psychological injuries, as surely the phrase "mental disturbance, or any consequences thereof" is broad enough to encompass permanent as well as temporary traumata inflicted on the nervous system.

Kropinski argues, however, that the rule reaffirmed by *Asuncion* is an anachronism, and that the District of Columbia is likely to reject it. Brief for Appellee at 22. Since the argument of this case on appeal, however, the District of Columbia Court of Appeals has put such speculation to rest. In *Williams v. Baker*, 540 A.2d 449 (D.C. 1988), the court engaged in an exhaustive study not only of its own precedents, but of the rule obtaining in other jurisdictions as well.

In the course of its discussion, the court reaffirmed *Asuncion*, noted that "[t]he District of Columbia was by no means the only jurisdiction to restrict the scope of claims for *mental disorders* not caused by physical injury resulting from the negligent conduct of another," *id.* at 452 (emphasis added), and reiterated this court's holding that a plaintiff must establish that his "'nervous troubles were *attributable* to the [physical] injuries sustained.'" *Id.* (quoting *Parrish v. United States*, 357 F.2d 828, 829 (D.C.Cir.1966) (emphasis added)). The *Williams* court "perceive[d] no valid reason ... for overruling the doctrines established by the courts of this jurisdiction." 540 A.2d at 457.

Kropinski neither alleges nor argues that his psychological troubles resulted from his physical injuries. He goes no further than to note that they were "concurrent," Brief for Appellee at 18, or had a common cause in his course in Sidhi. Complaint at ¶ 50(g). As neither establishes the causal relationship required by *Williams* and *Parrish*, Kropinski's claim of psychological injury must be dismissed.

### B. The Fraud Claim

Kropinski alleged that defendants had represented that he would derive a multitude of benefits from the practice of TM, including reduced stress, a "purified" nervous system, improved memory, perfect health, reduced depression, increased academic ability, reversal of the aging process, and the ability to advance world peace. Complaint at ¶ 12. He also alleged that defendants claimed that the knowledge he would gain from a course in Sidhi "would allow him to levitate or fly." *Id.* at ¶¶ 19–20. Kropinski asserted that, as part of the fraudulent scheme, the defendants assured potential practitioners that the practice of TM was scientifically proven to confer the claimed benefits. *Id.* at ¶ 13.

In reliance on these representations, Kropinski purchased instruction in TM beginning in 1972 and sedulously practiced the technique until 1983. He also asserts that the defendants advised him that any physical or psychological discomfort he encountered in practicing TM was the result of "unstressing," a process by which his nervous system purified itself. *Id.* at ¶ 29. Because of these assurances, he ignored warning signs of potential injury and instead took further TM courses. Eventually he became a teacher of TM and devoted several years of his life to advancing its use by others.

The district court concluded that Kropinski's claim of fraud satisfied each element of the five-part test set forth in *Urban Investments, Inc. v. Branham:*

(1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) with the intent to deceive and (5) action taken in reliance upon the representation.

464 A.2d 93, 98 (D.C.1983).

### 1. *Opinion Statements*

Defendants object that Kropinski's claim was based solely on defendants' statements of opinion, not statements of fact. Under their theory, opinion statements do not "refer[ ] to a material *fact*"; nor do they constitute "representations" on which a person can be found to rely within the meaning of *Urban Investments. Id.* (emphasis added). They also urge that the First Amendment bars fraud claims based solely on statements of opinion, just as it bars claims of libel based on statements of pure opinion. *E.g., Ollman v. Evans,* 750 F.2d 970 (D.C.Cir.1984), *cert. denied,* 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985). The district court properly rejected these contentions.

#### a. Opinions as "Facts"

■ The operative rule is that "[o]pinions or predictions of future events do not constitute representations of material facts upon which a plaintiff successfully may place dispositive reliance." *Howard v. Riggs Nat'l Bank,* 432 A.2d 701, 706 (D.C. 1981). As with most others, that rule has its exceptions. Opinions or predictions based "on facts that are unavailable to the listener either because he does not have access to them or because he is obviously incapable of interpreting them" may give rise to liability for fraud. *Day v. Avery,* 548 F.2d 1018, 1026 (D.C.Cir.1976), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1978), *cited with approval in Howard,* 432 A.2d at 706. Such liability may also be based on predictions if the listener can demonstrate that the person predicting an event knew of facts that would prevent its occurrence. *Day,* 548 F.2d at 1027.

■ The district court properly allowed Kropinski's fraud claim under the *Day* exceptions. He alleged that defendants had represented that TM was scientifically proven to confer certain personal and societal benefits. He was clearly entitled to

present evidence to prove that either the supporting scientific data was not available to him, or that he would have been unable to interpret the data if it had been. Furthermore, Kropinski might be able to prove that defendants knew that he could never achieve the advertised benefits. These are factual questions that a jury is competent to decide.

Of course, even if the allegedly fraudulent statements were found to fit within the *Day* exceptions, that case imposes the further requirement that a reasonable person would have found the fact on which the opinion or prediction rests to be one "upon which the recipient of a representation might prudently rely." *Id.* at 1026. We do not reach the question of whether Kropinski reasonably relied on the representations at the time he first began to practice TM because the question was not raised below and is not before us on appeal.

### b. Opinions, Fraud, and the First Amendment

■ Defendants note that the First Amendment bars libel actions based solely on opinion statements and argue that the First Amendment similarly prevents opinion statements from forming the basis for a fraud action. True, the First Amendment has been found to protect opinion statements from attack as libel; because such statements are not "facts," their truth or falsity cannot be established. *Hustler Magazine v. Falwell,* — U.S. —, 108 S.Ct. 876, 879, 99 L.Ed.2d 41 (1988). By contrast, the statements here at issue are alleged to have been based on facts. *See Day,* 548 F.2d at 1026–27. As it is the factual basis of the statements that is being challenged, the statements are not protected by the First Amendment.

### 2. *Thought Reform*

Kropinski alleges that defendants relied on a system of thought reform, which he describes as "a method used by the Koreans to change the belief systems of prisoners of war," Brief for Kropinski at 10; that is to say, as "brainwashing." During the trial, the allegation was put to two uses.

First, he asserted, as a substantive element of his fraud claim, that the application of thought reform created a dependency on TM and brought about a change in his beliefs, *id.,* even though defendants had promised him that TM did not involve a particular set of beliefs. Transcript ("Tr.") 12/11/86 at 76. Second, Kropinski attempted to justify his failure to bring suit within three years of the time he first experienced doubts about TM's efficacy because thought reform had prevented him from perceiving the system's falsity until a later time. For a discussion of this second aspect of thought reform, see below at IV.B.

The district court concluded that "the plaintiff has claimed that the defendants and TM changed his beliefs and promoted thought reform." Memorandum at 17 (citing Complaint at ¶¶ 32, 33, 34, & 50(*l*)). We find no allegation of changed beliefs in the cited paragraphs, although they do reflect elements that Kropinski's expert witness later associated with the practice of thought reform. They allege that defendants "intimidated plaintiff so that he believed it was not possible to leave the movement," *id.* at ¶ 32, created in him a state of "emotional and physical dependency" and "inability to think clearly" that prevented him from "realizing that the negative emotional, psychological and physical effects he was experiencing were the result of T.M. and the Sidhis," *id.* at ¶¶ 33 and 34, and that they "negligently and recklessly induced" in him a state of dependency "such that plaintiff was incapable of functioning adequately in the real world," *id.* at ¶ 50(*l*).

We read these paragraphs simply as part of plaintiff's explanation for his delay in recognizing the fraud and the causes of his injuries. They do not assert changes in belief or subjection to thought reform as substantive elements of Kropinski's claims for damages. Therefore on remand, evidence of changed belief and thought reform may not be admitted as a substantive basis for Kropinski's claims. Evidence of thought reform may be admitted, however, to establish why he failed to detect the fraud and persisted in his practice of TM

after the injuries now complained of first became apparent.

## C. Statute of Limitations and the Motion to Dismiss

■ Kropinski filed his complaint on September 9, 1985. Therefore, under District of Columbia law requiring that actions to recover damages for fraud be brought within three years after "the time the right to maintain the action accrues," D.C.Code § 12–310(8), his fraud claim is barred if the cause of action accrued before September 9, 1982.

Defendants argue that Kropinski must have realized by 1976 or 1977 that he was not obtaining the personal or societal benefits attributed to TM; and as he discovered, or should have discovered, the purported fraud well before September 1982, his claims are barred. Kropinski counters that because defendant employed thought reform, his ability to perceive the fraudulent nature of their representations had been impaired; and as he had attended one of defendants' courses in January 1983 and continued to practice TM until the fall of that year, his suit was timely. He also asserted that the defendants reassured him that his physical discomfort was part of TM "unstressing," and that he reasonably relied on those assurances.

The district judge noted, when he ruled on their motion for summary judgment, that defendants may be estopped from asserting a statute of limitations defense if they "lulled" the plaintiff into inaction. Memorandum at 8 n. 7 (discussing *Alley v. Dodge Hotel*, 551 F.2d 442 (D.C.Cir.), *cert. denied*, 431 U.S. 958, 97 S.Ct. 2684, 53 L.Ed.2d 277 (1977)). He properly concluded that it was for the jury to decide when Kropinski discovered or, under the exotic circumstances of this case, should have discovered the fraud. *Id.* at 7.

## IV. THE ISSUES AT TRIAL

### A. Negligence Claims

Two negligence claims were tried and submitted to the jury: the first for physical injuries, and the second for psychological injuries. The verdict sheet submitted to the jury, however, did not distinguish between the two negligence claims. Rec.Ex. at tab C. As a result, it is impossible to determine whether the finding of negligence applied to the infliction of physical injury, psychological injury, or both. Furthermore, the verdict sheet did not require the jury to allocate its award of damages among the several claims. As we have ordered the dismissal of the claim of psychological injuries, we must also remand for a new trial on the claim of physical injury and a new determination of damages, if any, to be awarded on that claim.

### B. Fraud and the Statute of Limitations

■ When one person defrauds another, there will be a delay between the time the fraud is perpetrated and the time the victim awakens to the fact. Accordingly, in a fraud case, the statute of limitations will not begin running until the date the fraud is discovered, or reasonably should have been. *King v. Kitchen Magic, Inc.*, 391 A.2d 1184, 1186 (D.C.1978); *see Richards v. Mileski*, 662 F.2d 65, 71 (D.C.Cir.1981) (due diligence test applied to reasonableness of claimant's efforts to uncover existence of a claim). In some cases, most notably medical treatment cases, the running of the statute is tolled beyond the discovery date if the tortfeasor reassures the victim that the negative effects should be expected as part of the treatment, and if a reasonable person would believe such reassurances. *See Page v. United States*, 729 F.2d 818, 823 & n. 36 (D.C.Cir.1984).

At trial, there was evidence that Kropinski had realized, by 1976 or 1977, that he would not receive the benefits attributed to TM. Tr. 12/15/86 at 544–46 (Kropinski testimony). Also, defendants argue that as Kropinski asserts that he had been deliberately misled by his instructors when he began his study of TM in 1972, and as he began to each TM in 1976, Tr. 12/16/86 at 580–82, he must have known by then which, if any, of the TM claims were fraudulent. Therefore, they conclude, the statute must have begun to run by 1976.

Kropinski meets these arguments with evidence that when he complained of adverse physical and psychological effects, defendants assured him that "something good was happening," and that he believed them, Tr. 12/15/86 at 407–08. He also asserts that he had been deprived of the ability to determine the source of the "negative emotional, psychological and physical effects" he was experiencing. *See, e.g.,* Complaint at ¶¶ 33–34. Thus, by analogy to the medical treatment cases, Kropinski argues that he reasonably accepted defendants' reassurances despite the negative effects. Consequently, his cause of action did not accrue until the fall of 1983 when he finally learned the falsity of defendants' representations and stopped practicing TM.

As the district court correctly noted when it denied defendants' motion for summary judgment, it was for the jury to decide when Kropinski discovered the fraud, or reasonably should have. But instead of presenting that question to the jurors, the court instructed them as follows:

> Defendants contend that plaintiff's claims are barred by the statute of limitations. That is to say, that plaintiff ceased participation in the defendant's [sic] activities more than three years before suit was filed. This is an affirmative defense. If defendants have established this then you should find for the defendants as to all of plaintiff's claims. On the other hand, if plaintiff's evidence establishes *some participation in or contact with* defendant's [sic] activities after September 8, 1982, which is three years before suit was filed, then you should continue your consideration of these instructions.

Tr. 1/12/87 at 22–23 (Jury Instructions) (emphasis added).

■ These instructions are flawed because they fail to instruct the jury that the statute of limitations begins to run "at the time when a prospective plaintiff knows or should know through the exercise of due diligence of [his] right to recover." *Baker v. A.H. Robins Co.*, 613 F.Supp. 994, 996 (D.D.C.1985). *See also Richards v. Mileski*, 662 F.2d 65, 71 (D.C.Cir.1981) ("The

test of due diligence measures the plaintiff's efforts to uncover his cause of action against what a reasonable person would have done in his situation given the same information."). As the jury was improperly instructed, and as the defense made a timely objection, Tr. 1/9/87 at 42–44, we remand for a new trial on the fraud claim.

### C. Expert Testimony on Thought Reform

Defendants also challenge the admission of testimony by Kropinski's expert witness on the subject of thought reform. First, they assert that because Dr. Singer's particular theory of thought reform is not "generally accepted" in the scientific community, she was not qualified to testify under the *Frye* standard. Brief for Appellants at 33–34 n. 55 (quoting *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923)). Second, they argue that her testimony is irrelevant and prejudicial.

#### 1. *Expert Witness's Qualifications*

*Frye* requires as a precondition for the admission of a particular expert's testimony that "[the] scientific principle ... from which the [expert's] deduction is made must be sufficiently established to have gained *general acceptance* in the particular field in which it belongs." *Frye v. United States,* 293 F. 1013, 1014 (D.C.Cir. 1923) (emphasis added).

We have recently held that "*Frye* is still the law in this Circuit." *United States v. Shorter*, 809 F.2d 54, 59–61 (D.C.Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987). We note, however, that *Frye* and *Shorter* involved criminal trials, as have all the other cases in this circuit that have applied the *Frye* standard. We also note that certain commentators have suggested that a less rigorous standard may be appropriate in civil cases. *See, e.g.,* 1 D. Louisell & C. Mueller, *Federal Evidence* § 107 (1977).

■ We decline to decide on this record whether *Frye*'s "general acceptance" requirement should be limited to criminal cases and a less demanding one, such as "substantial acceptability," applied in civil cases such as this. *See* E. Cleary, *McCor-*

*mick on Evidence* § 203 at 605–09 (1984). Kropinski, however, has failed to provide *any* evidence that Dr. Singer's particular theory, namely that techniques of thought reform may be effective in the absence of physical threats or coercion, has a significant following in the scientific community, let alone general acceptance.

The evidence of Dr. Singer's qualifications offered by plaintiff at trial was unfocused. *See* Tr. 12/11/86 at 92–99 (voir dire of Dr. Singer) (reciting Dr. Singer's academic background, awards received for work unrelated to her theory of thought control, and her experience working with individuals who have been involved in cults and the TM movement). Defendants' cross-examination at voir dire centered on Dr. Singer's theory of cults. The basis for the defendants' challenge to Dr. Singer was not fully explained because the court interrupted counsel and admitted Dr. Singer as an expert. *Id.* at 103. Later, during Dr. Singer's direct testimony on thought reform, defendants objected to the admissibility of her theory. *Id.* at 119.

During their cross-examination, defendants asked Dr. Singer to elaborate her thought reform theory but did not inquire into its acceptance by others in her profession. *Id.* at 178–84. On redirect, Dr. Singer's explanation of her theory again did not address its acceptability. *Id.* at 189–90. Defendants' expert, psychiatrist Dr. Melvin Prosen, testified that although Dr. Singer is a respected psychologist, her theory of thought reform found virtually no support among others in the field. Tr. 12/22/86 at 118.

Because of the uncertainty about the acceptability of Dr. Singer's thought reform thesis, we cannot sustain the trial court's decision to admit her testimony. On the record before us, however, we are unable to conclude that her views are not accepted. If, on retrial, the plaintiff wishes to present Dr. Singer's thought reform theory, the trial judge must be satisfied of its scientific acceptability and that her testimony would serve the purposes of Federal Rule of Evidence 702. We leave it to the district court in the first instance to determine the applicability of *Frye* in a case of this sort.

### 2. *Relevance and Unfair Prejudice*

Defendants also object that even if Dr. Singer's views are admissible, they should have been excluded as irrelevant and inflammatory. As we find that Dr. Singer's testimony should not have been admitted, we do not need to address these other issues. If, however, she or another expert is properly qualified to present expert testimony at a new trial, we will rely on the discretion of the trial judge to ensure its relevance and maintain the appropriate balance between the probative value of any evidence offered on the subject of thought reform and its possible prejudicial effects.

We do not address defendants' argument that plaintiff's theory of thought reform would burden their First Amendment rights. As Kropinski's changed beliefs and defendants' advocacy of their beliefs are not at issue in this case, neither is the First Amendment.

### V. Conclusion

Robert Kropinski can proceed against the defendants on his claims of fraud and negligent infliction of physical injury. The jury must be instructed on the discovery rule as part of its consideration of the statute of limitations defense for both claims. Expert testimony in the TM system's use of thought reform may not be admitted absent proper proof of the expert's qualifications. The opinion of the trial court and its judgment are

*Reversed in part and remanded.*