**Frieda SHAMLOO, Plaintiff,**

**v.**

**LIFESPRING, INC., et al., Defendants.**

**Civ. A. No. 88–2932.**

United States District Court, District of Columbia.

April 11, 1989.

Gerald F. Ragland, Alexandria, Va., for plaintiff.

Dan Mayers, David Donovan, and Wilmer, Cutler & Pickering, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

REVERCOMB, District Judge.

The plaintiff filed her complaint in this action on October 11, 1988, seeking compensation for injuries allegedly received as a result of her participation in three Lifespring training programs in December 1979 and January, 1980. The complaint alleged that the plaintiff's participation in the programs "occurred as a result of the recruitment, marketing, and/or high pressure selling tactics originated by the defendants and not because she independently decided to participate in the aforesaid trainings." Complaint ¶ 11. As alleged by the plaintiff, defendants, acting through their agents, "acted in a coercive manner" and represented that the program would be safe and helpful to her, upon which representations she relied. Complaint ¶ 14. As described in the complaint, the "trainings" offered by Lifespring included (¶ 16)

... psychological techniques; group pressures which resulted from manipulation of other participants by defendants' personnel in charge of the training sessions; mind control techniques which caused plaintiff to lose her ordinary psychological defenses; emotional confrontations which caused plaintiff to become emotionally distraught and disoriented and unable to cope with reality; physical deprivation through exhausting marathon sessions, limitation of food, sleep and access to bathroom facilities; the intentional infliction of emotional distress; and abandonment once her psychological balance had been disturbed.

The plaintiff alleges (¶ 18) that she exhibited "unusual and/or atypical emotional and psychological behavior" as a result of the methods listed above, and that the defendant failed to respond adequately "in part because of the large number of persons in the program and because the program followed a set and established pattern not tailored to the individual needs of each participant." Complaint ¶ 19.

The plaintiff alleges that her participation caused "a psychological decompensation, acute and permanent psychological injuries and severe and continuing depression, mood swings and other mental pain and suffering," requiring extensive mental health care including seven weeks of psychiatric hospitalization. Complaint ¶ 20.

Paragraphs 21 and 22 of the complaint allegedly explain why this lawsuit was filed in October, 1988, although the plaintiff's experiences with Lifespring date from late 1979 and early 1980. The plaintiff explains that "plaintiff was unable to comprehend the cause of her injuries and to comprehend and assert her legal rights" "because of the injuries" she suffered (¶ 21), and that she first discovered the *causal* link between Lifespring and her problems "upon reading an October 1987 *Washington Post* article about Lifespring." Complaint ¶ 22.

On December 23, 1988, and January 6, 1989, the defendants moved for judgment on the pleadings, or, in the alternative, for summary judgment. Aside from the additional personal defense of defendant Hanley, (lack of personal jurisdiction), which is preserved for later consideration, the grounds of the motions are the same. The defendants' motion argues that all of the plaintiff's claims are barred by the statute of limitations, and that various counts of the complaint are invalid as a matter of law.

Pursuant to D.C.Code Ann. § 12–301 (1981), the statute of limitations on the plaintiff's claims is three years, and the defendants point out accurately that since the relevant Lifespring courses took place nine years ago, the claims are time-barred absent an exception tolling the running of the limitation period. The plaintiff's opposition to this motion argues that she is entitled to the "discovery rule" exception to the statute of limitations, based on a claim that she was legally *non compos mentis* for a significant portion of the statutory period.

I. Plaintiff's Motion to Amend the Complaint.

██ Following the filing of defendants' motion, plaintiff moved (January 31, 1989)

**16**

to amend the complaint to include (as ¶ 21–A) the allegation that "plaintiff was and is *non compos mentis* within the meaning of D.C.Code section 12–302 so as to have tolled the running of the statute of limitations" from the time of her participation to the present day. In so moving, the plaintiff explained that the defendants have filed a motion that is focused on the statute of limitations, and that, while the plaintiff believes that her pleadings fairly raise the issues of tolling the statute based on the discovery rule and incompetency, the plaintiff wishes to amend the complaint to make her legal position "crystal clear," so that the disposition of the case will not turn on "ambiguity in the pleadings."

The decision whether to grant leave to amend is within this Court's discretion pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Although amendment is generally granted with liberality, the District Court may deny amendments if they appear to be in bad faith, or would be dilatory or futile. The defendants opposed the motion for leave to file an amended complaint, arguing that the plaintiff claimed mental incapacity for the first time in response to the pending motion to dismiss, and also that an attempt to amend the complaint is an inadequate response to the motion for summary judgment defendants have sought in the alternative, since pleadings alone are not sufficient to rebut a motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Since that time, however, the plaintiff has submitted affidavits of the plaintiff, her sister, and Dr. Gary Glass. Defendants argue that the plaintiff's affidavits are irrelevant, since they do not answer their arguments that plaintiff understood that the Lifespring personnel were not licensed professionals, (making the discovery rule inapplicable), and that even were the Court to apply the discovery rule, the affidavits establish that plaintiff knew of her injury more than three years before filing the complaint, had reason to know of the causal connection between her injury and Lifespring, and

knew or should have known of some evidence of wrongful conduct by defendants in 1979 and 1980. *See Bussineau v. President and Directors of Georgetown College*, 518 A.2d 423 (D.C.1986).[1]

In the context of a motion for judgment on the pleadings, the Court notes that the Federal Rules provide that "knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). The Court finds that it was clear even from the original complaint that the plaintiff was alleging lack of "knowledge" during the limitation period due to long-term mental and emotional impairment. Although the plaintiff did not allege *non compos mentis* status in those words prior to the proposed amendments, the unamended complaint made it clear to the Court that her argument was that the psychological effects of the training prevented her from realizing the nature and source of her problems during the years following her participation in Lifespring training. As an answer to defendants' argument that the claims are time-barred, the plaintiff has sought to amend the complaint to clarify this point. The Court finds that the proposed amendment regarding mental capacity serves the purpose plaintiff states, that of clarifying allegations already present in the pleadings. Therefore, leave to amend will be granted.

II. Defendants' Motion for Judgment on the Pleadings.

■ Defendants argue that the discovery rule is not available to plaintiff because it is limited to claims for professional negligence or malpractice. Although the D.C. Court of Appeals has held that the discovery rule has been applied only in cases of professional negligence or malpractice, *Woodruff v. McConkey*, 524 A.2d 722, 727 (D.C.1987), licensure is not the dispositive question in deciding whether defendants may be held to a "professional" standard of care. *See, e.g., Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192 (D.C. 1984). Plaintiff has admitted to knowing before taking Lifespring "courses" that the

---

1. These arguments are addressed below.

staff "are not *licensed* psychiatrists or psychologists," but the Court finds that D.C. case law does not hold that an unlicensed purveyor of "professional" psychological services should be afforded greater protection from claims of negligence or malpractice than a licensed one. Plaintiff contends that the "training" is so like group therapy that the defendants should be held to reasonable standards applicable to mental health professionals, and has adduced evidence (in the shape of internal Lifespring memoranda) that prior to plaintiff's participation, the defendants were on notice that their business had psychological effects and presented a risk of harm to certain individuals. This argument is persuasive on the question of holding defendants to a professional standard, since, among other things, Lifespring currently has a policy of rejecting applicants who have had nervous breakdowns or recent psychological treatment, an indication that the company is aware of the close relationship its doings bear to the work of professionally licensed psychologists.

Furthermore, Lifespring's stationery states that it is "[a] program ... leading toward a more fulfilled individual and a more harmonious world." The "program" offered does not appear to be aimed at fulfillment in terms of physical conditioning or intellectual training. To the contrary, Lifespring offers a product which appears to be geared primarily to the psychological. The Court will not insist that Lifespring hang up a shingle saying "psychologist" in order to find, for purposes of this motion, that they hold themselves out as having psychological expertise.[2]

District of Columbia case law on this issue supports the notion that licensure is not dispositive of the applicability of the discovery rule. *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192 (D.C.1984). The nature of the "professional" relationship is clearly as important as the question of licensure under District law, including the consideration of such factors as whether the "professional" holds himself out as possessing special knowledge not possessed by laymen, and whether the client relies on such assurances, including assurances that there was no wrongdoing on defendant's part. *Bussineau v. President and Directors of Georgetown College*, 518 A.2d 423 (D.C.1986). All of these factors are clearly alleged in the complaint.

Since D.C. case law supports an analysis utilizing these factors, the Court distinguishes the statutory analysis in Judge Bryant's opinion in *Jones v. Lifespring, Inc.*, No. 87–0067, slip op. (D.D.C. Oct. 20, 1988), construing the District of Columbia Practice of Psychology Act to restrict the courts to a reading of "professional" which requires defendants to use the word "psychology" in their title or advertising. Unlike the *Jones* case, this case is not brought under a statute defining a class of potential defendants, and case law in the District of Columbia does not restrict application of the discovery rule to *licensed* professionals on a per se basis.

■ Defendants also argue that the plaintiff fails the test established for the discovery rule under *Bussineau*.[3] That test consists of three prongs, providing that the cause of action accrues for purposes of the discovery rule when the plain-

---

**2.** The internal Lifespring memoranda included in plaintiff's submissions reveal Lifespring staff members indulging in the use of their own brand of certain varieties of psychologist's jargon, *e.g.*, "her behavior was erratic and hyper"; "her behavior was hostile"; "in the past eight months I have experienced three people who have developed 'abnormal' behavior after the training"; "Jim ... was an aggressive leader"; "I interpreted this ... as simply emotional involvement"; "he ran an entire dramatic crazy number"; "Jim then appeared to come out of it and become normal"; "he pulled odd numbers"; "I spent an hour with him ... and watched him

flip from quite normal conversation to eye rolled back body strained silence [sic]".

**3.** Defendants make a subsidiary argument that plaintiff's delay in filing suit has prejudiced them since the time lapse has caused defendant to mislay a document plaintiff would have signed at the time of her "training" acknowledging that defendants' employees are not licensed professionals. Since the plaintiff does not dispute her awareness of this fact, and since the Court does not find it dispositive of the discovery rule argument, the fact that delay has made it impossible for defendants to produce this document is not prejudicial.

tiff knows or with reasonable diligence should know of (1) an injury, (2) its alleged cause, and (3) some evidence of wrongful conduct.

First, defendants argue that plaintiff should not have the benefit of the discovery rule on the grounds that her symptoms were, or ought to have been, readily apparent to her before three years prior to filing the complaint. The Court finds that it would be unreasonable to hold the plaintiff to such a standard, not only on grounds of mental incompetence as alleged, but also because the nature of a psychological "injury" is not always traceable to a distinct "cause" in the sense familiar to tort law. Defendants argue that plaintiff's history of mental health treatment and seven week hospitalization ought to establish that she knew or should have known of her injury more than three years before the filing of her complaint. The Court finds this argument conclusory. The Court is aware of the rule that an objective standard is employed under the discovery rule to determine when a "reasonable person" with plaintiff's factual knowledge knew or should have known of the possible injury. *Baker v. A.H. Robins Co.,* 613 F.Supp. 994, 996 (D.D.C.1985). But the fact that an individual develops psychological problems, even severe ones, is not sufficient in itself to put a reasonable person on notice that they have been *injured.* Far too many persons undergo serious psychological suffering without legally compensible injury to make it a reasonable expectation on the part of the courts that the emergence of a psychological problem should be evaluated immediately in terms of injury.[4] *See Kropinski v. World Plan Executive Council,* 853 F.2d 948, 954–55 (D.C.Cir.1988) (evidence of "thought reform" caused by psy-chological training may be admitted as evidence to establish why plaintiff failed to detect mental injury).

Second, defendants argue that the causal connection required under *Bussineau* is not satisfied by plaintiff because she exhibited emotional or atypical behavior *during the course* of her training sessions, and was therefore, or should have been, aware that she had been "injured". The Court finds (*see* note 4) that the fact that an individual experiences an episode of unusual or atypical behavior, or of emotional distress and disorientation, is not sufficient to notify that individual that one specific incident is indeed an injury, or that any given event is *the* unique cause of all subsequent psychological problems.

Third, defendants argue that their allegedly abusive conduct as described in paragraph 16 of the complaint makes it clear that plaintiff was aware of wrongful conduct by defendants in 1979 and '80. The Court recalls, however, that in *Bussineau* it was held that the discovery rule is intended to apply to cases where the injury and its "cause in fact" do not themselves provide evidence of negligence, and that "[t]his is particularly so when the professional reassures the lay client or patient that all is well and that things are proceeding as they should." Therefore, the fact that plaintiff *now* feels justified in claiming wrongful conduct does not negate her reliance on such assurances at the time. Indeed, the assurances upon which she allegedly relied (Complaint ¶ 14) serve to bring her within the ambit of the discovery rule. *See Kropinski,* 853 F.2d at 955, where the Court found that defendants may be estopped from asserting a statute of limitations defense if they "lulled" the plaintiff

---

[4]. The Court claims no expertise in psychology, but notes that some schools, including the Freudian, use the doctrine of the "over-determination" of psychological traits, holding that all psychological disorders are derived from more than one cause. *See* S. Freud, *Mourning and Melancholia,* in *General Psychological Theory,* 177 (P. Rieff trans. 1963). If this is true, it might be flatly *unreasonable* to expect a person with psychological problems to identify *one* cause, injury or emotional truama as *the* reason for a prolonged disorder. The complaint in this case does no more than allege a history of psychological problems and treatment. Although the plaintiff was aware of these conditions, it is unreasonable to impute knowledge of an injury, or knowledge of a causal link with defendants' business, on that basis. The allegation is consistent with the subsequent allegation that it was only on the basis of the Washington Post's story that the plaintiff first began to realize the possibility of the causal relation which forms the basis of this case.

into inaction by psychological means, and held that it is a jury question as to when a plaintiff discovered an injury.

The Court finds that the complaint satisfies the three-pronged test of *Bussineau,* and is therefore eligible for application of the discovery rule.

### III. Defendants' Motion to Dismiss Counts I and II.

■ The defendants have requested the Court to enter judgment on each count of the complaint that seeks damages for emotional distress. Count I alleges negligent infliction of emotional distress. The plaintiff argues that District of Columbia law on this issue is undecided at this time, since the Court of Appeals has granted rehearing *en banc* in *Williams v. Baker,* 540 A.2d 449 (D.C. June 21, 1988) to reconsider whether the District permits claims for negligent infliction of emotional distress in the absence of physical injury. However, the precise issue to be decided in *Williams v. Baker* is liability to bystanders who suffer emotional shock from contemporaneous observation of physical injury to close relatives. In cases involving claims falling outside this narrowly restricted area, District of Columbia law is clear that a plaintiff may not recover for negligently psychological injuries which do not result from physical injury. *Kropinski,* 853 F.2d at 952. Since the plaintiff has failed to allege the requisite physical injury to sustain a claim of negligent infliction of emotional distress, Count I is dismissed.

■ Count II of the complaint alleges intentional infliction of emotional distress. The District of Columbia imposes liability for this intentional tort only when the defendant's conduct goes beyond the bounds of decency and falls well below civilized standards. *Waldon v. Covington,* 415 A.2d 1070 (D.C.1980). The defendants have argued that no reasonable jury could find the conduct of the defendants out-

rageous under the circumstances, and that plaintiff has failed to identify a discrete incident causing injury. The Court finds that such a ruling would be premature at this time, given that pleadings are not intended, under the Federal Rules, to contain a complete factual exposition of matters intended to be proven at trial, and are meant to serve a notice-giving function only. Assuming the truth of all the allegations in the pleadings, the Court cannot find that a reasonable jury would be unable to find the alleged conduct outrageous.

### IV. Defendants' Alternative Motion for Summary Judgment.

Defendants' motion in the alternative for summary judgment will not be granted due to the genuine issues of material fact raised by the plaintiff's affidavits. In particular, the defense based on failure to prosecute during the limitations period is an issue of fact to be decided by the jury, since it is "for the jury to decide when [the plaintiff] discovered or, under the exotic circumstances of this case, should have discovered the [injury]." *Kropinski,* 853 F.2d at 955. That issue of fact is raised by the affidavit of Dr. Gary Glass.[5]

Therefore, it is hereby ORDERED that plaintiff's motion to amend the complaint is GRANTED.

It is FURTHER ORDERED that defendants' motion for judgment on the pleadings is DENIED.

It is FURTHER ORDERED that defendants' motion to dismiss Count I of the complaint is GRANTED.

It is FURTHER ORDERED that defendants' motion to dismiss Count II of the complaint is DENIED.

It is FURTHER ORDERED that defendants' alternative motion for summary judgment is DENIED.

It is FURTHER ORDERED that the Court's Order of January 23, 1989, staying

5. The Court observes that since the previously granted stay of discovery is lifted by this Order, there remains the possibility that the results of discovery will make it possible to dispose of the case on the basis of renewed motions for sum-

mary judgment. The Court does not intend to suggest that the disputed facts which preclude summary judgment at this stage in the case will continue to do so after discovery.

discovery, is VACATED and the stay of discovery is LIFTED.

It is FURTHER ORDERED that a Status Hearing will be held on May 17, 1989 at 9:45 A.M.