Amelia HAWKINS, as Personal Representative of the Estate of Bessie S. Adams, Plaintiff,

v.

Bernard GREENFIELD

and

James P. Greenfield, Defendants.

Civ. A. No. 90–801 SSH.

United States District Court, District of Columbia.

Aug. 18, 1992.

Jeffrey L. Poston, Bickel & Brewer, Washington, D.C., for plaintiff.

Philip Musolino, Washington, D.C., for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

The case is before the Court on defendants' motion to dismiss or for summary judgment and plaintiff's opposition thereto. On consideration of the entire record and for the reasons set forth below, the motion is granted in part and denied in part.

This case concerns allegations of fraud and undue influence, breach of the warranty of habitability, breach of the duty to repair, breach of the covenant of quiet enjoyment, intentional infliction of emotional distress, and negligent infliction of emotional distress. Plaintiff seeks both compensatory and punitive damages. Defendants have moved for summary judgment on the defenses of statute of limitations and laches.[1] They also have moved to dismiss all of plaintiff's causes of action for failure to state a claim. Finally, defendants have moved for summary judgment on the merits of plaintiff's claim of fraud and undue influence and on plaintiff's claim for punitive damages against defendant James Greenfield.

## BACKGROUND

The following facts are taken from plaintiff's complaint. On May 6, 1954, Bessie Adams and her husband became owners of the property at 119 E Street N.W., Washington D.C. (the E Street property). Adams's husband took care of all financial matters for the couple, including all matters relating to the purchase and subsequent mortgage payments for the E Street property. Adams became the sole owner of the property when her husband died in

1957. Adams first met defendant Bernard Greenfield in 1959, when he inquired about purchasing the E Street property. Greenfield is an attorney and a member of the District of Columbia bar whose primary business is buying and selling real estate. Adams, a black woman, was in her seventies at the time and, she alleges, was functionally illiterate.[2]

Adams and Greenfield had several meetings regarding the E Street property at which no one else was present. Greenfield insisted that they be alone during their discussions and refused to speak with either of Adams's children. Adams refused to sell the property to Greenfield. However, Greenfield agreed to assume the note secured by a mortgage on the house, to handle all financial matters relating to the house, and to allow Adams to live there for the rest of her life. In return, Adams agreed to pay Greenfield $75.00 a month.[3] Greenfield presented Adams with a contract that he claimed memorialized their agreement, and she signed the contract based on his representations. In fact, the document was a contract of sale for the property. Greenfield advised Adams not to show the document to anyone, and she did not until 1988.

Adams continued to live at the E Street property until April 30, 1965. At that time, Greenfield again presented her with a document which he told her to sign and not to show to anyone else. He described the document as an agreement for her to move out of the E Street property temporarily so that he could perform renovations. She signed the document, which in fact was a deed conveying her right to reside at the E Street property in exchange for $10.00. Adams moved from the E Street property to a house owned by Greenfield at 625 New Jersey Avenue (the New Jersey Avenue

---

1. Defendants contend that the statute of limitations and laches bar plaintiff's fraud and undue influence claim in its entirety. They contend that the statute of limitations limits plaintiff's remaining claims to three years.

2. Adams died on August 10, 1990. Pursuant to Fed R.Civ.P. 25, Amelia Hawkins as personal

representative of Adams's estate was substituted as the plaintiff in this action.

3. The balance of the note on the house was $4,897.94, payable in monthly installments of $53.00.

residence).[4] The day after she moved, Greenfield razed the E Street property.

Adams lived at the New Jersey Avenue residence for 25 years. During that time, the condition of the house continuously declined despite her repeated requests for repairs. In the spring of 1988, Adams filed a complaint with the District of Columbia Department of Consumer and Regulatory Affairs, Housing and Environmental Regulation Administration. As a result of the complaint, a District of Columbia housing inspector inspected the New Jersey Avenue residence and found 70 violations of the Housing Code. Although Greenfield was notified of the violations, most of the necessary repairs were never made.[5] Instead, both defendant Bernard Greenfield and defendant James Greenfield threatened to evict Adams and attempted to force her to move out of the New Jersey Avenue residence.[6]

In September 1988, Adams contacted Legal Counsel for the Elderly. She showed the 1959 contract and the 1965 deed to an attorney who read the documents to her. Plaintiff first learned the contents of the documents on that occasion.

Defendants deny most of plaintiff's material allegations. Bernard Greenfield contends that Adams was not functionally illiterate. He further contends that he explained the terms of both the 1959 contract and the 1965 deed to Adams and that he encouraged her to circulate the documents to her relatives. Greenfield denies making any false representations regarding the contents of the documents to Adams. According to Greenfield, Adams was interested in obtaining a life tenancy at low rent and therefore she agreed to sell the E Street property.

## DISCUSSION

### Statute of Limitations

Defendants raise three statute of limitations defenses. First, defendants argue that the statute of limitations bars plaintiff's cause of action for fraud and undue influence. Under District of Columbia law, an action for fraud must be brought within three years of "the time the right to maintain the action accrues." D.C.Code § 12–301(8). The statute of limitations for an action for fraud begins to run when the fraud is or should have been discovered through plaintiff's due diligence. *Kropinski v. World Plan Executive Council—US*, 853 F.2d 948, 955 (D.C.Cir.1988). When the alleged fraud was or should have been discovered depends on the facts of the particular situation, *Hohri v. United States*, 782 F.2d 227, 250 (D.C.Cir.1986), and is an issue for the jury to resolve, *see Interdonato v. Interdonato*, 521 A.2d 1124, 1135–36 (D.C.1987); *Bailey v. Greenberg*, 516 A.2d 934, 940 (D.C.1986). Defendants bear the burden of showing that plaintiff has not met the due diligence standard. *Richards v. Mileski*, 662 F.2d 65, 71 (D.C.Cir.1981).

The events underlying plaintiff's fraud and undue influence claim occurred in 1959 and 1965. Adams filed the complaint in this action in 1990. Plaintiff argues that the statute of limitations did not begin to run until Adams discovered the contents of the contract and the deed. Citing Adams's age, illiteracy, and reliance on Greenfield, plaintiff contends that the statute of limitations was tolled until 1988. Defendants dispute plaintiff's factual assertions and contend that plaintiff knew or should have known of the facts underlying

---

**4.** Defendant Bernard Greenfield owned the New Jersey Avenue residence when Mrs. Adams first moved in. In 1983 he sold the property to his son James Greenfield. Four months later James Greenfield sold the property back to his father. James Greenfield again bought the property from his father in September, 1988.

**5.** In January 1990, Adams left the New Jersey Avenue residence to stay with relatives in New York. Adams left with the intent of returning

to the New Jersey Avenue residence once the necessary repairs were made.

**6.** Plaintiff filed a claim against defendants alleging that they violated § 502 of the Rental Housing Act, D.C.Code Ann. § 45–2552 (1986), which prohibits a landlord from retaliating against a tenant who exercises any right granted by the Act. On October 13, 1989, a Hearing Examiner found that the Greenfields retaliated against Adams.

her claim before 1988. Defendants' contentions highlight the existence of genuine issues regarding facts material to the application of the statute of limitations. Therefore, the Court denies defendants' motion for summary judgment on that defense.

 Defendants argue that the statute of limitations restricts plaintiff's claims under the lease for New Jersey Avenue residence to three years. Under District of Columbia law, leases for urban dwelling units are governed by contract law. *Javins v. First Nat'l Realty Corp.*, 428 F.2d 1071, 1075 (D.C.Cir.1970); *Management Partnership Inc. v. Crumlin*, 423 A.2d 939, 941 (D.C.1980). The statute of limitations for an express or implied contract is three years. D.C.Code § 12–301(7). Therefore, plaintiff's claims for breach of the implied warranty of habitability, breach of the duty to make repairs, and breach of the covenant of quiet enjoyment are properly limited to the events that occurred within the three years of the commencement of this action.

 Defendants argue that the remaining two claims, intentional and negligent infliction of emotional distress, are likewise limited to three years. "The applicable statute of limitations for intentional infliction of emotional distress depends on the statute of limitations applied to the underlying common law claims." *Doe v. Southeastern University*, 732 F.Supp. 7, 8 (D.D.C.1990). The statute of limitations for the underlying landlord-tenant and fraud claims is three years. Therefore, a three-year statute of limitations applies to plaintiff's claim for intentional infliction of emotional distress. *See id.* In addition, the statute of limitations for negligence claims is three years. Therefore, plaintiff's negligent infliction of emotional dis-

tress claim is subject to a three-year limitations period either directly or as a derivative of the underlying claims.[7] Therefore, plaintiff's claims for intentional infliction of emotional distress and negligent infliction of emotional distress are restricted to events that occurred within three years of the commencement of this action.

*Laches*

 Defendants raise the defense of laches as to plaintiff's claim for fraud and undue influence.[8] The doctrine of laches is an equitable doctrine which "bars relief to those who delay assertion of their claims for an unreasonable time." *N.A.A.C.P. v. N.A.A.C.P. Legal Defense and Educational Fund*, 753 F.2d 131, 137 (D.C.Cir.1985). For the doctrine of laches to bar a claim "the evidence must show that the delay was both unreasonable and that it prejudiced the defendant." *Powell v. Zuckert*, 366 F.2d 634, 636 (D.C.Cir.1966). The burden of proof lies with a defendant. *Id.* at 638. This burden is particularly difficult to meet when the defense is being raised against an allegation of fraud. Defendants have not met their burden of establishing that Adams delayed unreasonably in filing this action. Therefore, laches is not a bar to plaintiff's claim of fraud and undue influence.

*Failure To State a Claim*

 Defendants assert that plaintiff fails to state a claim with regard to the causes of action for fraud and undue influence, breach of the covenant of quiet enjoyment, intentional infliction of emotional distress, and negligent infliction of emotional distress. The Court finds that the complaint alleges facts sufficient to state a claim for each of the causes of action.[9]

---

7. In the alternative, the Court could apply the statute of limitations for claims for which no other statute of limitations is specifically prescribed to plaintiff's claim for negligent infliction of emotional distress. That statute of limitations is three years as well. D.C.Code § 12–301(8).

8. Defendants also raise this defense with regard to property claims related to the New Jersey Avenue residence. Since plaintiff does not raise

any property claims with regard to the New Jersey Avenue residence, the Court will not further address this issue.

9. The Court also notes that defendants misstate the law regarding the covenant of quiet enjoyment. According to defendants, the covenant of quiet enjoyment only applies to acts by a third party which interfere with a tenant's use and possession of the rented property. In fact, the law is to the contrary. A claim for breach of

*Summary Judgment on the Merits: Fraud and Undue Influence*

Defendants assert that summary judgment is appropriate with regard to plaintiff's fraud and undue influence claim. In support of that contention, however, defendants cite factual assertions that are in dispute. For example, defendants state that Adams could read and that she understood and agreed to all of the terms of the documents she signed. The verified complaint and the affidavit of Adams's daughter directly contradict those statements. Thus, there are genuine issues of material fact that preclude summary judgment with regard to the fraud and undue influence claim.

*Punitive Damages Against Defendant James Greenfield*

■ Defendants have moved for summary judgment on plaintiff's claim for punitive damages against defendant James Greenfield on her claim for intentional infliction of emotional distress.[10] Defendants contend that James Greenfield's "sole connection to any claims in this case is his intermittent record ownership of the New Jersey Avenue property." (Motion at 11.) Nevertheless, James Greenfield may be liable for the conduct of his father as his agent during the periods that he was the owner of the New Jersey Avenue property. *See Jordan v. Medley,* 711 F.2d 211, 216 (D.C.Cir.1983); *International Dist. Corp. v. American Dist. Tel. Co.,* 569 F.2d 136, 139 (D.C.Cir.1977). James Greenfield's knowledge of the condition of the New Jersey Avenue residence and the scope of the authority he granted to his father are disputed issues of fact. Therefore, summary judgment is not appropriate on plaintiff's claim for punitive damages against James Greenfield.

*Conclusion*

The Court denies defendants' motion for summary judgment on plaintiff's fraud and undue influence claim. The Court finds that the statute of limitations restricts plaintiff's claims for breach of the implied warranty of habitability, breach of the duty to make repairs, breach of the covenant of quiet enjoyment, and plaintiff's claims for intentional and negligent infliction of emotional distress. The Court denies defendants' motion to dismiss for failure to state a claim for which relief may be granted. Finally, the Court denies defendants' motion for summary judgment as to plaintiff's claim for punitive damages as to the claim for intentional infliction of emotional distress against defendant James Greenfield. An appropriate Order accompanies this Opinion.

ORDER

Before the Court is defendants' motion to dismiss or for summary judgment and plaintiff's opposition. On consideration of the entire record and for the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that the motion is granted in part with regard to plaintiff's claims for breach of the implied warranty of habitability, breach of the duty to make repairs, breach of the covenant of quiet enjoyment and plaintiff's claims for intentional and negligent infliction of emotional distress. Those claims are limited to the events that occurred within three years of the filing of the complaint in this action. It hereby further is

ORDERED, that the remainder of defendants' motion is denied.

SO ORDERED.

■

---

the covenant of quiet enjoyment can only lie against a landlord for acts by the landlord which interfere with the tenant's use and possession.

**10.** Defendants also move to dismiss the request for punitive damages against James Greenfield in plaintiff's fraud and undue influence claim. However, that claim does not involve James Greenfield.