**UNITED STATES, Plaintiff,**

v.

**Stephen FISHMAN, Defendant.**

**No. CR–88–0616 DLJ.**

United States District Court,
N.D. California.

April 13, 1990.

Robert L. Dondero, Asst. U.S. Atty., N.D. Cal., San Francisco, Cal., for plaintiff.

Marc S. Nurik with the law firm of Nurik & Kyle, Miami, Fla., for defendant.

## MEMORANDUM OPINION

JENSEN, District Judge.

On December 27, 1989, this Court heard the government's motion to exclude certain expert testimony proffered by defendant. Assistant United States Attorney Robert Dondero appeared for the government. Marc Nurik appeared for defendant. Since the hearing the parties have filed supple-

mental briefing, which the Court has received and reviewed. For all the following reasons, the Court GRANTS IN PART and DENIES IN PART the government's motion.

## I. BACKGROUND FACTS

The United States indicted Steven Fishman on eleven counts of mail fraud, in violation of 18 U.S.C. § 1341, on September 23, 1988. The indictment charges that Mr. Fishman defrauded various federal district courts, including those in the Northern District of California, by fraudulently obtaining settlement monies and securities in connection with shareholder class action lawsuits. This fraud allegedly occurred over a lengthy period of time—from September 1983 to May 1988.

Two months after his indictment, defendant notified this Court of his intent to rely on an insanity defense, pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure. Within the context of his insanity defense, defendant seeks to present evidence that influence techniques, or brainwashing, practiced upon him by the Church of Scientology ("the Church") was a cause of his state of mind at the time of the charged offenses. Defendant contends that he has been a member of the Church since 1979. In furtherance of the brainwashing aspect of his defense, Mr. Fishman seeks to call two expert witnesses, Dr. Margaret Singer and Dr. Richard Ofshe. Presently before the Court is the government's motion to exclude the testimony of these witnesses.

### A. The Proffered Testimony

Dr. Margaret Singer is a well known and highly regarded forensic psychologist. She evaluated Stephen Fishman's mental state shortly after his indictment. Having formed certain psychological opinions and preliminary conclusions from this evaluation, Dr. Singer is expected to testify that defendant's delusional view of the world at the time he committed the alleged fraud supports her opinion that he was legally insane.

Based on her training in psychology, Dr. Singer is expected to testify that defendant is incredibly suggestible, compulsive and obsessive. She further believes that this suggestibleness is long-standing, as is his peculiar behavior and bizarre reasoning. Dr. Singer thus characterizes the defendant as a strange and eccentric person *before* he came into contact with the Church of Scientology. Dr. Singer is also expected to testify that upon joining the Church of Scientology, defendant was subjected to intense suggestion procedures as well as other social and behavioral influence processes. In the opinion of Dr. Singer, the conjoining of the Church's influence techniques and Mr. Fishman's previous psychological condition permitted his mental state to evolve to a point of extremely clouded reasoning and judgment. Defendant created an alternative reality, and then lived in this mental state for at least five years. Dr. Singer concludes that while the defendant is bright, obsessive, and capable in many ways, his entire view of reality during this period was delusional.

Dr. Richard Ofshe is a social psychologist who holds a Ph.D. degree in sociology. Defendant concedes that Dr. Ofshe is not a mental health professional, and therefore cannot testify as to the defendant's mental state at the time of the charged offenses. Rather, defendant presents Dr. Ofshe as a person whose expertise enables him to describe the coordinated program of coercive influence and behavioral control that defendant was subjected to by members of the Church of Scientology. Dr. Ofshe would testify to his opinion that, by controlling certain social influence variables, Scientology can induce a person to believe that he or she has acquired and can currently utilize superhuman powers. Dr. Ofshe's proffered opinion is that the Church's influence process regularly leads people to believe that they have the power to control mental matter, energy, space and time.

With reference to defendant's case in particular, Dr. Ofshe is of the belief that defendant was made the target of a prolonged, organized program of influence, which was designed to lead Mr. Fishman to believe that participation in Scientology's

fraud scheme was not a reprehensible act. Dr. Ofshe would further opine that for nearly ten years following the defendant's recruitment, the Church manipulated him and carefully monitored his every step in furtherance of the organization's fraud scheme. Dr. Ofshe ultimately offers his conclusion that Mr. Fishman's role in the alleged class action fraud scheme was little more than that of a clerk or a fall guy.

### B. The Government's Motion to Exclude Testimony

The government challenges the admissibility of expert testimony by Dr. Singer and Dr. Ofshe on three separate grounds. First the government argues that the theories regarding thought reform espoused by Dr. Singer and Dr. Ofshe are not generally accepted within the applicable scientific community. Second, the government argues that the Court should exclude Dr. Singer's and Dr. Ofshe's testimony on grounds of relevance, based on the parameters established for such evidence by the Insanity Defense Reform Act of 1984. The government also contends that evidence regarding thought reform and Scientology is irrelevant to this case because the factual record establishes that defendant did not join the Church until 1986, at which time he had already committed most of the charged offenses. Third, the government urges the Court to exclude Dr. Ofshe's testimony because he is not qualified to testify as an expert in this case.

### II. APPLICABLE LEGAL STANDARD

■ The admissibility of testimony by an expert is governed by Rule 702 of the Federal Rules of Evidence. Pursuant to this rule, the proffered expert must have specialized knowledge that assists "the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Interpreting Rule 702, this Court applies the principles set forth in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), and *United States v. Amaral*, 488 F.2d 1148 (9th Cir.1973), for determining the admissibility of expert testimony from mental health professionals. *Amaral* re-

quires that expert testimony (1) come from a qualified expert; (2) be of proper subject; (3) conform to a generally accepted explanatory theory; and (4) have probative value that exceeds its prejudicial effect. *Id.* at 1153. *See also United States v. Christophe*, 833 F.2d 1296, 1299 (9th Cir.1987). The proponent of expert testimony has the burden of laying a proper foundation showing the underlying scientific basis and reliability of the testimony. *United States v. Gwaltney*, 790 F.2d 1378, 1382 (9th Cir. 1986).

### III. ACCEPTANCE WITHIN THE SCIENTIFIC COMMUNITY

In this case Dr. Margaret Singer and Dr. Richard Ofshe seek to testify regarding thought reform theories, particularly with respect to religious cults.

Thought reform theory is not new; it derives from studies of American prisoners of war during the Korean conflict in the 1950s. Seeking to explain why some POWs appeared to adopt the belief system of their captors, journalist and CIA operative Edward Hunter formulated a theory that the free will and judgment of these prisoners had been overborne by sophisticated techniques of mind control or "brainwashing." *See* E. Hunter, *Brainwashing in Red China* (1951). The term brainwashing continues to be used to describe a mind control process involving

... the creation of a controlled environment that heightens the susceptibility of a subject to suggestion and manipulation through sensory deprivation, physiological depletion, cognitive dissonance, peer pressure, and a clear assertion of authority and dominion. The aftermath of [this] indoctrination is a severe impairment of autonomy and [of] the ability to think independently, which induces a subject's unyielding compliance and the rupture of past connections, affiliations, and associations.

*Molko v. Holy Spirit Assn. for the Unification of World Christianity*, 46 Cal.3d 1092, 1109, 252 Cal.Rptr. 122, 762 P.2d 46 (1988) (quoting *Peterson v. Sorlien*, 299 N.W.2d 123, 126 (Minn.1981)).

Shortly after Edward Hunter observed what he called "brainwashing" of American POWs, Dr. Robert Lifton and Dr. Edgar Schein produced the foundational scientific scholarship on thought reform theory. Relying as Hunter did on the experiences of American POW's in China, Dr. Lifton and Dr. Schein concluded that brainwashing, or "coercive persuasion," exists and is remarkably effective. *See* R. Lifton, *Thought Reform and the Psychology of Totalism* (1961); E. Schein, *Coercive Persuasion* (1961). In what has since led to substantial controversy, however, Dr. Lifton and Dr. Schein did not confine their model of coercive persuasion to the prisoner-of-war setting. Instead, their seminal work found coercive persuasion "applicable to all instances of persuasion or influence in which the person is constrained by physical, social or psychological forces from leaving the influencing situation." *Coercive Persuasion, supra,* at 269.

In the present action, the government contends that both Lifton and Schein consider the role of extreme force or physical coercion as intrinsic to the thought reform process. While the Court disagrees with this reading of Lifton and Schein, it is true that their scholarship recognizes that a continuum of coerciveness in influence processes exists within thought reform theory. One pole of the continuum is defined in terms of extreme physical coercion, the other in terms of totally individualistic, autonomous decision making. Points along the continuum include not only so-called religious cults which are at issue here, but also influence processes such as college fraternities, the armed forces, self-help organizations such as Alcoholics Anonymous, and presumably, criminal gangs.

█ The application of the concept of coercive persuasion to religious cults by persons such as Dr. Singer and Dr. Ofshe is a relatively recent development. This extension of Lifton and Schein's theories has met resistance from members of the scientific community who believe that legitimate thought reform theory is necessarily limited to persuasion accompanied by physical restraint or mistreatment. Although the record before the Court is replete with declarations, affidavits and letters from reputable psychologists and sociologists who concur with the thought reform theories propounded by Dr. Singer and Dr. Ofshe, the government has submitted an equal number of declarations, affidavits and letters from reputable psychologists and sociologists who disagree with their theories. Defendant also relies on Dr. Singer's authorship of the *Merck Manual*'s entry on group psychodynamics, which includes a discussion of cults, to support the proposition that Dr. Singer's theories are generally accepted within her field. *See The Merck Manual of Diagnosis and Therapy* (15th ed. 1987). While Dr. Singer's contribution to a well known medical reference work helps establish her credentials as a respected psychologist (a professional status with which the Court does not quarrel), the mere existence of a favorable *Merck Manual* entry is not dispositive as to whether her theories on coercive persuasion are generally accepted among her peers.

A more significant barometer of prevailing views within the scientific community is provided by professional organizations such as the American Psychological Association ("APA") and American Sociological Association ("ASA"). The evidence before the Court, which is detailed below, shows that neither the APA nor the ASA has endorsed the views of Dr. Singer and Dr. Ofshe on thought reform.

The APA considered the scientific merit of the Singer–Ofshe position on coercive persuasion in the mid–1980s. Specifically, the APA commissioned a task force to study and prepare a report on deceptive and indirect methods of persuasion and control. The APA named Dr. Singer to chair the task force. Before Dr. Singer's task force had completed its report, however, the APA publicly endorsed a position on coercive persuasion contrary to Dr. Singer's. In early 1987, the APA joined with certain behavioral and social scientists in submitting an *amicus* brief for a case where two individuals alleged they had been coerced into joining and maintaining membership in a religious cult. The case,

*Molko v. Holy Spirit Assn. for the Unification of World Christianity*, 46 Cal.3d 1092, 252 Cal.Rptr. 122, 762 P.2d 46 (1988), was at that time pending before the California Supreme Court. The APA brief argued that the trial court in the *Molko* case had properly excluded the proffered expert testimony of Dr. Singer because her coercive persuasion theory did not represent a meaningful scientific concept.

Shortly after the *amicus* brief was submitted to the California Supreme Court, the APA withdrew its name as a signatory. While defendant here contends that the APA's withdrawal from its participation in the *Molko* case signified a repudiation of the brief's criticism of Dr. Singer's theories, in truth the withdrawal occurred for procedural and not substantive reasons. The record before the Court firmly establishes that the APA decided to wait for the report from Dr. Singer's task force before endorsing any position on coercive persuasion. Indeed, the APA's motion to withdraw as a signatory expressly stated that by its action, the APA did not mean to suggest endorsement of any views opposed to those set forth in the *amicus* brief, nor that it would not ultimately be able to subscribe to the views expressed in the brief. Significantly, the APA ultimately rejected the Singer task force report on coercive persuasion when it was submitted for consideration in October 1988. The APA found that Dr. Singer's report lacked scientific merit and that the studies supporting its findings lacked methodological rigor.

The American Sociological Association has also recently considered the merits of the Singer–Ofshe thesis applying coercive persuasion to religious cults. In May 1989 the ASA joined the Society for the Scientific Study of Religion and a large group of individuals in submitting another *amicus* brief in the *Molko* litigation, this time while the case was pending before the United States Supreme Court. As the APA had done, the ASA brief took a position in sharp contradiction to the Singer–Ofshe thesis. This decision caused a large and vocal segment of the ASA membership, including Dr. Richard Ofshe, to demand that the ASA withdraw as a signatory on the brief. In addition to disagreeing with the position adopted by the *amicus* brief, Dr. Ofshe's group also objected to the fact that the ASA never formally authorized that its name be placed on the brief. Although some members urged the ASA to maintain its name on the *amicus* brief, the ASA ultimately voted to withdraw as a signatory. There is nothing in the record to show that the ASA's action was based upon a reversal of the position expressed in its brief. Instead, it appears that the ASA has not formally aligned itself with either camp since severing its participation in the *Molko* case in August 1989.

As chronicled above, the record in this case establishes that the scientific community has resisted the Singer–Ofshe thesis applying coercive persuasion to religious cults. The thesis that these cults overcome the free will of their members is controversial. But in determining the admissibility of expert testimony, the Court recognizes that the general acceptance standard enunciated in *Frye* allows for some controversy. *Frye* holds that "while courts will go a long way in admitting expert testimony deduced from a well recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." *Frye v. United States*, 293 F. at 1014.

The issue of whether or not the proffered testimony in this case satisfies the *Frye* test is not one of first impression among the federal courts. In *Kropinski v. World Plan Executive Council–U.S.*, 853 F.2d 948 (DC Cir.1988), the Court of Appeals unanimously reversed the trial court for permitting Dr. Singer to testify on coercive persuasion. In that case plaintiff brought a civil action against defendant for allegedly using transcendental meditation to brainwash him. The appellate court concluded that the plaintiff had "failed to provide *any* evidence that Dr. Singer's particular theory, namely that techniques of thought reform may be effective in the absence of physical threats or coercion, has

a significant following in the scientific community, let alone general acceptance." *Id.* at 957. Unlike the present case, however, the *Kropinski* court declined to admit Dr. Singer's testimony on the basis of an incomplete record. Here defendant has had ample opportunity to submit evidence in support of his contention that Dr. Singer's and Dr. Ofshe's views are accepted within the scientific community. However, the evidentiary record of controversy and significant rejection of these views provided by the government in this case is clearly more compelling.

■ There is little dispute in this case that the relevant field for purposes of the *Frye* analysis encompasses the American Psychological Association and the American Sociological Association. Based on the expansive record in this case, the Court finds that there is no consensus or general acceptance within these associations regarding the thought reform theories of Dr. Singer and Dr. Ofshe. The proffered testimony in this case has been challenged by the scientific community on grounds of both scientific merit and methodological rigor. Dr. Singer and Dr. Ofshe contend that an individual's free will can be overborne by persuasion techniques in the absence of physical force. They further contend that they can pinpoint with scientific accuracy the degree of non-physical coercion necessary to overcome the free will of an individual having a particular personality composite.

To the extent understood by the Court, the controversy surrounding the proffered testimony stems from the fact that psychologists and sociologists are limited to investigating the range of observable responses to environmental stimuli. Coercion is a feature of the external environment; its effect or degree must be inferred from the constricted range of behavior most people exhibit in that environment. Similarly, free will is ineffable and not susceptible to direct observation or measurement. To borrow an example from one of the *amici* briefs discussed above, when a seemingly fit but harmless beggar asks for money, some people are inclined to give money and others are not. But when a mugger holds a knife at a victim's throat and asks for money, most people give it. Mugging accompanied with the threat of physical force is quite coercive, while begging ordinarily is not. The Court finds general acceptance within the scientific community (and elsewhere) that armed mugging is sufficiently coercive to overcome an average person's free will. But the proffered testimony in this case relates to coercive persuasion without the use or threat of physical force. The subject of the testimony is thus similar to a harmless beggar's attempt to coerce money from a stranger. There is no consensus within the scientific community regarding whether the deprivation of free will occurs in these circumstances, nor is there a consensus on how to measure this deprivation.

The disagreement within the field of thought reform regarding the Singer–Ofshe thesis is highlighted by Dr. Robert Lifton's own reservations regarding the application of coercive persuasion theory to religious cults. Dr. Lifton recently observed that

> cults are not primarily a psychiatric problem, but a social and historical issue.... I do not think that pattern is best addressed legally.... Not all moral questions are soluble legally or psychiatrically, nor should they be. I think psychiatrists and theologians have in common the need for a certain restraint here, to avoid playing God and to reject the notion that we have anything like a complete solution that comes from our points of view or our particular disciplines.

R. Lifton, *The Future of Immortality and Other Essays for a Nuclear Age,* 218–219 (1987). The Court agrees with Dr. Lifton that restraint is called for in this case. Although Dr. Singer and Dr. Ofshe are respected members of their fields, their theories regarding the coercive persuasion practiced by religious cults are not sufficiently established to be admitted as evidence in federal courts of law.

Accordingly, the Court finds that defendant has not met its burden under *Frye* of showing that Dr. Singer's and Dr. Ofshe's

theories of thought reform are generally accepted within their fields. Not only has Dr. Lifton expressed reservations regarding these theories, but more importantly the Singer–Ofshe thesis lacks the imprimatur of the APA and ASA. Thought reform is a complex and controversial subject within the scientific community, and defendant bears the burden of establishing the scientific basis, reliability, and general acceptance of his proffered expert testimony. At best, the evidence establishes that psychiatrists, psychologists, and sociologists disagree as to whether or not there is agreement regarding the Singer–Ofshe thesis. The Court therefore excludes defendant's proffered testimony.

## IV. DEFENDANT'S INSANITY AND DIMINISHED CAPACITY DEFENSES

Having determined that Dr. Singer's and Dr. Ofshe's thought reform theories fail to satisfy the *Frye* test for reliable expert testimony, the Court next considers the relevance of this testimony in the context of defendant's insanity and diminished capacity defenses.

### A. The Insanity Defense

■ The Insanity Defense Reform Act of 1984, as codified within Title 18 U.S.C. section 17, governs an insanity defense to a federal crime. Under that Act, the defendant has the burden of establishing his insanity defense by clear and convincing evidence, and must meet the statute's two-prong test. First, he must establish that he suffered from a severe mental disease or defect when he committed the charged offense. Second, his mental disease or defect must have prevented him from appreciating the nature and quality or wrongfulness of his conduct. Failure to establish either prong by clear and convincing evidence results in the legal insufficiency of the defense of insanity. 18 U.S.C. § 17(a); *United States v. Knott*, 894 F.2d 1119, 1121 (9th Cir.1990).

By this legislation, Congress essentially adopted the venerable *M'Naghten* rule, grounded in cognitive defect concepts, to establish the legal insanity defense for federal criminal law. At the same time, by purposeful exclusion, Congress rejected the various formulations of defects of volition which had been stated in other definitions of legal insanity.

Thus the changes implemented by the Insanity Defense Reform Act limit the defense to cognitive defects and effectively eliminate the use of asserted volitional defects to establish the defense. In this case defendant concedes that the facts do not support an irresistible impulse theory, but contends that his legal insanity defense is not based on volitional defect. Defendant seeks to present psychiatric testimony which, he argues, establishes that he has a long-standing mental disease or defect which, conjoined with the coercive persuasion practiced upon him by the Church of Scientology, rendered the defendant unable to appreciate the nature and quality or wrongfulness of his acts.

■ The government challenges defendant's proposed psychiatric testimony on grounds that the defendant participated in the Church of Scientology voluntarily and that the Insanity Defense Reform Act only contemplates mental diseases or defects that are beyond the defendant's control. In light of the Court's ruling on the admissibility of thought reform testimony under *Frye*, the Court does not address these arguments. Additionally, the government argues that defendant's pre-existing mental condition by itself is not enough to establish an insanity defense, and therefore Dr. Singer's and Dr. Ofshe's testimony should be excluded altogether. Considering only that portion of defendant's proffered testimony regarding his legal insanity defense which is not based on thought reform theory, the Court rejects the government's contention. The Court will allow Dr. Singer to testify regarding her examination of the defendant and, to the extent relevant to the legal insanity defense, her opinion as to defendant's state of mind at the time of the charged offenses. To the extent that it is a part of her diagnostic examination, Dr. Singer also may testify regarding defendant's descrip-

tion of his experiences with Scientology. However, since the Court has already ruled that Dr. Singer's thought reform theories are not generally accepted within her field, she may not rely on any asserted relationship between defendant's experiences with Scientology and her thought reform theories as the basis for her opinion of defendant's mental state.

### B. The Diminished Capacity Defense

■ The defense of "diminished capacity" is simply a label that identifies evidence introduced by a defendant to support a claim that he did not commit the crime charged because he did not possess the requisite *mens rea.* A diminished capacity defense varies from a legal insanity defense in several important respects. Whereas following a successful legal insanity defense the court retains control of the defendant and may order involuntary commitment, a successful diminished capacity defense results in a complete acquittal. Moreover, whereas it is well settled that the Insanity Defense Reform Act of 1984 limited the legal insanity defense to cognitive defect testimony, it is not entirely clear that the Act limited any surviving diminished capacity defense in the same fashion. The Insanity Defense Reform Act expressly states that any mental disease or defect that does not render the defendant unable to appreciate the nature and quality of his wrongfulness is not a defense. 18 U.S.C. § 17(a). Nevertheless, despite the apparent anomaly of limiting state of mind testimony in circumstances where subsequent legal control is contemplated, and permitting such testimony where no subsequent legal control is contemplated, recent cases suggest that where a defendant proffers a diminished capacity defense to a specific intent crime, psychiatric testimony that goes beyond the defendant's cognitive defects is admissible to negate the element of specific intent. *See United States v. Twine,* 853 F.2d 676 (9th Cir.1988); *United States v. Pohlot,* 827 F.2d 889 (3d Cir.1987); *United States v. Frisbee,* 623 F.Supp. 1217 (N.D.Cal.1985).

■ In the present case defendant is charged with eleven counts of mail fraud, which requires a specific intent to deceive. Defendant thus contends that he is entitled to present evidence of his mental defect on the issue of whether or not he possessed the mental capacity to form a specific intent to commit fraud. Because such psychiatric testimony raises a strong danger of misuse, courts must carefully weigh "whether the proof offered is grounded in sufficient scientific support to warrant use in the courtroom, and whether it would aid the jury in deciding the ultimate issues." *United States v. Pohlot,* 827 F.2d at 905 (quoting *U.S. v. Bennett,* 539 F.2d 45, 53 (10th Cir.1976)).

> Defendant's proffer states that
>
> ... the proffered testimony of Drs. Ofshe and Singer relating to influence techniques brought to bear upon Mr. Fishman that altered his perception, attitude, decision-making processes (cognitive functions) and prevented him from exercising independent judgment (volitional element) is highly relevant to a finding by the jury that he lacked specific intent, regardless of whether or not the Defendant was legally insane pursuant to 18 U.S.C. § 17.

Def. supp. memo p. 16. Defendant thus seeks to introduce evidence regarding the influence techniques, or coercive persuasion, utilized by the Church of Scientology to negate the government's contention that the defendant possessed the requisite specific intent to commit fraud. The Court has already ruled that the Singer–Ofshe thesis involving coercive persuasion and religious cults is not generally accepted within the scientific community and consequently is inadmissible under *Frye.* Because this inadmissible expert testimony is the only evidence offered by defendant to negate the element of specific intent, the Court will not permit any evidence in support of a diminished capacity defense.

As an alternative argument, the government contends that specific intent is not at issue in this case because the defendant joined the Church of Scientology after he commenced his scheme to defraud, and con-

sequently must have had a pre-existing intent that was independent of the Church's coercive persuasion. Exactly when the defendant joined the Church of Scientology is disputed by the parties. Because this is an issue of fact for the jury to consider, the government's argument fails.

Independent of the government's last argument, as already indicated the Court holds that evidence of defendant's diminished capacity is inadmissible in this case. Defendant's proffered testimony negating the element of specific intent relates exclusively to alleged influence techniques brought to bear upon him by the Church of Scientology, which is an aspect of thought reform theory that the Court has deemed inadmissible under the *Frye* standard. To the extent that the decisions in this Circuit in *United States v. Frisbee* and *United States v. Twine* permit the jury to hear evidence of diminished capacity, they do not apply to the facts of this case. These cases do not alter the admissibility standards set forth in Rule 702 of the Federal Rules of Evidence. Even if the proffered testimony on diminished capacity in this case was admissible under Rule 702, the Court would heed the admonishment in *Frisbee* that "expert testimony that is unduly confusing, misleading, or repetitive or that will not be of assistance to the jury in determining the issue of specific intent will be excluded." 623 F.Supp. at 1224. For all the foregoing reasons, the Court excludes the proffered testimony relating to defendant's diminished capacity.

## V. EXPERT QUALIFICATIONS

The Ninth Circuit has interpreted *Frye* to require psychiatric testimony to come from a qualified expert. *United States v. Amaral*, 488 F.2d 1148, 1153 (9th Cir.1973). The government does not challenge the qualifications of Dr. Singer. The Court therefore only addresses the issue of whether or not Dr. Ofshe is qualified to testify regarding how external influences from the Church of Scientology affected defendant's mental state at the time of the alleged offenses.

■ Federal Rule of Evidence 702 states that only witnesses with the requisite "knowledge, skill, experience, training, or education" may testify as an expert. Dr. Ofshe is a university sociology professor who teaches graduate and undergraduate level courses on the subject of thought reform. He has no expertise in forensic psychiatry or psychology. Because Dr. Ofshe is not a mental health professional, under Rule 702 he cannot testify as to whether or not defendant suffered from a severe mental disorder.

Defendant seeks to avoid this evidentiary bar by offering Dr. Ofshe as an expert in the process of thought reform. Defendant contends that because thought reform represents a hybrid area, the Court should permit testimony by a social psychologist to complement and provide foundational support for Dr. Singer's ultimate opinion. The Court disagrees. Even if collateral evidence may be admissible in some cases where an expert bases an opinion upon assumptions of fact provided by such evidence, it is clearly not admissible here, where the ultimate expert opinion itself is inadmissible.

In addition, Dr. Ofshe would not be permitted to testify even if Dr. Singer was allowed to base her opinion on thought reform theories. Dr. Ofshe's proffered testimony provides his conclusions as to (1) how the Church of Scientology uses influence techniques, and (2) the impact that these techniques have on church members, including the defendant. A general discussion of the former topic is not relevant to this case. As to the latter topic, Dr. Ofshe is no more qualified to diagnose the state of mind of church members *en masse* than he is to diagnose the defendant's mental state.

As a final matter, Dr. Ofshe's general description of the Church's practices has a probative value which is substantially outweighed by its danger of unfair prejudice and would mislead and confuse the jury. Accordingly, this aspect of his proffered testimony must be excluded under Federal Rule of Evidence 403.

The Court finds that Dr. Ofshe is not qualified to testify as an expert witness on defendant's mental state, nor is his proposed testimony regarding the conduct of the Church of Scientology relevant or admissible on the issues of specific intent and insanity in this case. The Court makes these findings independent of its ruling that Dr. Ofshe's theories on thought reform are not generally accepted within the meaning of the *Frye* test. On all of these grounds, Dr. Ofshe's proposed testimony is excluded in its entirety.

## VI. CONCLUSION

For all the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the government's motion to exclude the proffered psychiatric testimony of Dr. Singer and Dr. Ofshe on the subject of thought reform. The Court's rulings are summarized as follows:

1. The government's motion to exclude the expert testimony of Dr. Richard Ofshe is GRANTED, on the grounds that Dr. Ofshe is not a mental health professional, his testimony is not relevant to the issues, his theories regarding thought reform are not generally accepted within the scientific community, and his testimony is inadmissible under Federal Rule of Evidence 403.

2. The government's motion to exclude the expert testimony of Dr. Margaret Singer is GRANTED IN PART and DENIED IN PART. As a qualified mental health professional, Dr. Singer may testify and give her opinion as to whether or not the defendant was suffering from a mental defect at the time of the events charged. Dr. Singer's testimony, however, is limited by the Insanity Defense Reform Act of 1984. Pursuant to this Act, Dr. Singer cannot support her opinion regarding defendant's sanity with testimony that involves volitional defects, as opposed to cognitive defects. In addition, Dr. Singer cannot support her opinion with testimony that involves thought reform, because the Court finds that her views on thought reform, like Dr. Ofshe's, are not generally accepted within the scientific community.

IT IS SO ORDERED.