# Supreme Court of Florida

_____

No. SC11-2198
_____

**DANA WILLIAMSON,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[May 2, 2013]
<u>**CORRECTED OPINION**</u>

PER CURIAM.

Dana Williamson appeals an order denying his motion to vacate his first-degree murder conviction and sentence of death under Florida Rule of Criminal Procedure 3.851, raising several claims of ineffective assistance of trial counsel. We have jurisdiction. <u>See</u> art. V, § 3(b)(1), Fla. Const. We affirm upon finding that Williamson has failed to satisfy the prejudice prong of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

## OVERVIEW

Dana Williamson was convicted of first-degree murder, armed burglary, extortion, three counts of attempted murder, five counts of armed kidnapping, and

four counts of armed robbery, and respectively sentenced to death and multiple terms of imprisonment. This Court affirmed on direct appeal, but later vacated Williamson's convictions and sentences on the attempted murder charges. See Williamson v. State (Williamson I), 681 So. 2d 688, 698 (Fla. 1996); Williamson v. State (Williamson II), 994 So. 2d 1000, 1017 (Fla. 2008).

The State's key witness at trial was Charles Panoyan, who claimed that he did not identify Williamson as the murderer for over three years because Williamson had threatened to torture and kill Panoyan's family if he did. Williamson I, 681 So. 2d at 692-93. The State called sociologist Dr. Richard J. Ofshe to testify that Panoyan's delay displayed a pattern of someone who had been terrorized and was acting in response to a credible threat. Williamson II, 994 So. 2d at 1008-09. Trial counsel did not voir dire Dr. Ofshe, request a Frye[1] hearing, or request a curative instruction relating to his opinion of whether the threat was credible. Id. at 1009-11.

Williamson argued in his postconviction motion that trial counsel was thereby ineffective, but the postconviction court summarily denied relief on those and all other claims raised in the motion. Id. at 1005. This Court affirmed on appeal, except as to the claims regarding Dr. Ofshe, on which it reversed and

---

1. Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).

remanded for an evidentiary hearing.  Id. at 1008-11.  After holding such a hearing, the postconviction court denied relief.  Williamson now appeals.

**BACKGROUND**

The facts are fully set forth in our opinion on direct appeal.  See Williamson I, 681 So. 2d at 690-94.  As relevant to the present postconviction appeal, Charles Panoyan was watching television in the Decker home with Robert Decker and Robert's father, Clyde, on the evening of November 4, 1988, when a masked gunman entered, subdued the men, and rummaged through the house.  Robert's wife Donna arrived home, was likewise subdued, and stabbed to death.  The assailant shot Robert, Clyde, and the Decker's two-year-old son Carl, but all three survived.  Id. at 690-93.

Panoyan was unharmed and reported the incident but did not immediately identify Williamson as the assailant.  Both Panoyan (who had been a suspect for some time) and Williamson (based on an anonymous tip) were arrested and charged with murder in 1990 and detained in the same jail, but Panoyan was released on his own recognizance eighteen months later.  Several months after that, a total of approximately three years after the crime, Panoyan identified Williamson as the assailant.  He testified that he did not come forward sooner because on the night of the crimes Williamson had threatened to torture and kill members of Panoyan's family if he did, and later, while in jail, Williamson exploited Panoyan's

fear of him in order to maintain complete control over Panoyan. Panoyan explained that he finally came forward because he discovered that Williamson and Williamson's brother were the only two people involved in the crime. Williamson had told Panoyan that there were a number of other men involved who would help carry out his threats but, shortly before his release, Panoyan discovered through a conversation with Williamson that the claims regarding the involvement of other men were false. Williamson I, 681 So. 2d at 690-93.

Panoyan was the State's key witness, and sociologist Dr. Richard J. Ofshe testified for the State, as an expert in the field of extreme techniques of influence and control, that Panoyan's delay in identifying Williamson displayed "a pattern of someone who has . . . been terrorized, and someone who is acting in response to a credible threat[.]" Williamson II, 994 So. 2d at 1009. Williamson was found guilty of all charges based on this and other evidence, and the trial court followed the jury's 11-1 recommendation to impose the death penalty. This Court affirmed on direct appeal. Williamson I, 681 So. 2d at 694.

Williamson later raised a number of claims in his initial motion for postconviction relief, including that (1) trial counsel was ineffective because he failed to voir dire Dr. Ofshe on "influence and control," obviating a hearing under Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), and (2) trial counsel was ineffective because he failed to request a curative instruction after the court

- 4 -

sustained a defense objection to testimony by Dr. Ofshe who vouched for the credibility of Panoyan. Williamson II, 994 So. 2d at 1005. The postconviction court summarily denied relief on all claims, and Williamson appealed. This Court affirmed except as to the two claims regarding Dr. Ofshe:

> As to these claims, the record reflects that during the trial, while the State was still presenting the testimony from Panoyan, the State asked if it could take a witness out of turn because its expert witness, Dr. Ofshe, needed to get back to California that night. Defense counsel informed the court that although counsel had read through the expert's statement and read through the expert's interview with Panoyan, defense counsel had not yet had an opportunity to question this out-of-state expert witness. Defense counsel asked to question Dr. Ofshe before Panoyan's cross-examination began, asserting that he did not want his cross-examination of Panoyan to be split up by the expert witness. The trial judge agreed, and counsel was given an opportunity to talk to Dr. Ofshe. The State then called Dr. Ofshe and questioned him about his qualifications, establishing that Dr. Ofshe received a Ph.D. in sociology, specialized in tactics of influence, authored a book on individual decision-making, and authored numerous articles on the subject of extreme and extraordinary techniques of influence and control. The State tendered Dr. Ofshe as an expert in the field of extreme techniques of influence and control, and after defense counsel declined to voir dire the witness, the court declared him to be an expert in that subject.
>
> On direct examination, Dr. Ofshe testified that he reviewed two depositions taken of Panoyan, examined statements Panoyan gave to the police, and interviewed Panoyan. Dr. Ofshe then provided his opinion as to this case:
>
> > Q. [The State] But did you have the opportunity to discern any kind of control or influence that had been exercised by Dana Williamson according to the attestation of Charles Panoyan, which degrees or kinds of control you recognized?
> > A. [Dr. Ofshe] Yes.
> > Q. Would you tell us, please.

A. Well, in reviewing the history of Mr. Panoyan's experience in connection with the invasion and the death and the assaults at the Decker residence, and over the course of the investigation that followed, including his incarceration and ultimate decision to speak about what happened, the pattern that he displays is a pattern of someone who has, for [want] of a better word, been terrorized, and someone who is acting in response to a credible threat, not only to himself, but also, and to some degree, more importantly, to members of his family. And that the manner in which he responds at various points indicates quite clearly that he has a great concern about something happening to his family, which he revealed to me in the interview I did with him, and I gather, revealed again in testimony that you heard.

And there is a sequence over the course of his involvement that's consistent with this, including who he tried to compromise between the fear that he had for himself, the fear that he had for his family and his desire to aid the Decker family.

The point at which he chose to do certain things reflects the kind of threat and fear he was acting under, and the particular decisions that he made to me are completely consistent with what he says about the sort of threats that he was exposed to.

We conclude that this testimony is the kind of expert opinion testimony which should have been tested by the trial court in accord with the Frye standard before the testimony was admitted into evidence. The postconviction court, however, summarily denied Williamson's claim pertaining to the lack of any voir dire, first holding that this claim was insufficiently pled because Williamson failed to specifically allege what information he would have elicited to exclude Dr. Ofshe's testimony. We disagree that the claim was insufficiently pled. As a part of this claim, Williamson asserted that his trial counsel did not request a Frye hearing as to Dr. Ofshe and Dr. Ofshe's testimony that Panoyan's reaction fit the profile of one who had experienced the type of threat claimed by Panoyan. This Court has recognized in Frye hearings that "[t]he proponent of the evidence bears the burden of establishing by a preponderance of the evidence

- 6 -

the general acceptance of the underlying scientific principles and methodology." Castillo v. E.I. Du Pont De Nemours & Co., Inc., 854 So. 2d 1264, 1268 (Fla. 2003). Because we conclude that this testimony required a Frye hearing, Williamson does not need to provide specific factual allegations as to what his trial counsel should have elicited from the expert. It was defense counsel's obligation to request a Frye hearing regarding the general acceptance of the underlying scientific principles and methodology, and if he had done so, the burden would have shifted to the State to show that Dr. Ofshe's testimony could meet the Frye test.

We recognize that the postconviction court did further hold that even if it reviewed the merits of the claim, summary denial of the claim was appropriate because there was competent and substantial evidence to support the trial court's finding that Dr. Ofshe was an expert in his field and his testimony was not subject to a Frye analysis because Dr. Ofshe was providing pure opinion testimony. We disagree.

As noted earlier, in accord with the Frye standard, we have held "in order to introduce expert testimony deduced from a scientific principle or discovery, the principle or discovery 'must be sufficiently established to have gained general acceptance in the particular field in which it belongs.' " Flanagan v. State, 625 So. 2d 827, 828 (Fla. 1993) (quoting Frye, 293 F. at 1014). The postconviction trial court recognized our adherence to Frye and was correct in also recognizing that we have held that a Frye hearing is not necessary in respect to what we have characterized as "pure opinion" testimony. See Flanagan, 625 So. 2d at 828. But we do not agree with the circuit court that Dr. Ofshe's testimony was such "pure opinion testimony." We conclude that Dr. Ofshe's testimony was the kind of expert testimony which we held in Flanagan and in Hadden v. State, 690 So. 2d 573 (Fla. 1997), to require a Frye evaluation by the trial judge. In Hadden, the State proffered expert opinion testimony from a mental health counselor which was "offered to prove the alleged victim of sexual abuse exhibit[ed] symptoms consistent with one who has been sexually abused." Id. at 575. Defense counsel objected, asserting that the testimony lacked scientific reliability. The trial court overruled the objection and permitted the expert to testify. Hadden was subsequently convicted of lewd assault. On appeal, the First District Court of Appeal held that this testimony did not need to be subject to a Frye test because this type of expert testimony was not new or novel

or, alternatively, the testimony was opinion testimony not covered by Frye. Id. at 576. This Court disagreed, holding that syndrome testimony in child abuse prosecutions is not pure opinion testimony.

In this case, Dr. Ofshe testified that Panoyan "displayed a pattern of someone who has . . . been terrorized, and someone who is acting in response to a credible threat." We find that, similar to Hadden, this was syndrome testimony and should have been tested as to whether it was sufficiently established to have general acceptance in the particular field in which it belongs. Frye, 293 F. at 1014. We find summary denial of this claim is inappropriate and thus reverse the circuit court's order and remand the claim for an evidentiary hearing. At the evidentiary hearing, the circuit court should consider evidence concerning the effectiveness of counsel, including the reasons counsel failed to request a Frye hearing. In respect to prejudice, the circuit court is to make a determination as to whether this evidence was generally accepted in its particular field. If the circuit court determines that the evidence should not have been admitted into evidence, the court should determine whether the admission of the evidence was prejudicial under Strickland, i.e., whether there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. As we stressed above, "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

In a related claim, Williamson asserts that his counsel was ineffective in failing to request a curative instruction after the court sustained an objection pertaining to Dr. Ofshe's opinion as to whether the threat was credible. The postconviction trial court denied this claim, finding that Williamson mischaracterized the circumstances surrounding Dr. Ofshe's testimony because after trial counsel objected to Dr. Ofshe's testimony, the court conducted a sidebar conference so that the jury did not hear Dr. Ofshe's answer to the question to which counsel objected. We find that the postconviction court interpreted the defendant's claim too narrowly. In looking to the specific claim that Williamson presents, Williamson does not assert that trial counsel was ineffective because the jury heard testimony and argument presented during the sidebar conference. Instead, Williamson asserts that his counsel was ineffective because counsel resisted only at sidebar when the State attempted to link a hypothetical with the believability and credibility of the threat to which Panoyan testified and that his counsel was ineffective when the trial court sustained his

- 8 -

objections and counsel did not seek curative instructions based on the prior testimony. Since the actual statements to which defense counsel objects are the subject of the claim upon which we reverse and remand for an evidentiary hearing, we likewise remand this claim to the postconviction court for an evidentiary hearing.

Williamson II, 994 So. 2d at 1008-1011. The postconviction court accordingly held an evidentiary hearing on remand and, upon considering the testimony and the parties' arguments, ruled that trial counsel had not been ineffective as to either claim. Williamson now appeals that ruling.

## ANALYSIS

The standard of review for ineffective of counsel claims is as follows:

> Following the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:

>> First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.

> Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986) (citations omitted). . . .
> Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the trial court's factual findings that are supported by competent, substantial evidence, but reviewing the trial court's

legal conclusions de novo.  See Sochor v. State, 883 So. 2d 766, 771–72 (Fla. 2004).

Taylor v. State, 62 So. 3d 1101, 1109-10 (Fla. 2011) (quoting Pagan v. State, 29 So. 3d 938, 948-49 (Fla. 2009)) (parallel citations omitted).

We recognized on direct appeal that "Panoyan's credibility was a material issue on which the State's case depended," Williamson I, 681 So. 2d at 695 (emphasis added), but stress that we did not state it was the material issue in the case.  We reject Williamson's contrary assertion that "[t]his case . . . came down to a swearing match between Williamson on the one hand, and Panoyan on the other."  We acknowledge that Dr. Ofshe's testimony could have had an impact in the case, but "could have" is not enough.  Rather, to establish prejudice under Strickland, "[t]he defendant must show that there is a reasonable probability that, . . . the result of the proceeding would have been different."  466 U.S. at 694.

"In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury," and "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."  Id. at 695-96.  Considering the totality of the evidence in this case, we do not find it reasonably probable that the result would have been different even if Dr. Ofshe's testimony had been entirely excluded, or if the urged curative instruction had been read as to a part of that testimony.  As the postconviction court ruled:

> [E]ven if Dr. Ofshe's testimony were inadmissible, this Court would find that the admission of the evidence was not prejudicial. There is no reasonable probability, sufficient to undermine this Court's confidence, that the outcome of the case would have been different if Dr. Ofshe's testimony had not been admitted into evidence. Several witnesses other than Panoyan testified about his fear and paranoid behavior. Several other witnesses corroborated Panoyan's identification of [Williamson]. Finally, three inmates testified about [Williamson's] inculpatory statements made in jail. All of this testimony would remain even if Dr. Ofshe's testimony had not been admitted.

In addition, this Court on direct appeal recognized that the State presented evidence demonstrating that Williamson owned a hat similar to the one found following the murder at the Decker residence; evidence linking Williamson and his brother to a utility belt on which there were keys to the handcuffs used to bind Robert and Carl Decker; evidence demonstrating that Williamson had knowledge of legal forms, where the gunman during the crime had asked the Deckers to sign their names to a legal-sized piece of paper; and other circumstantial evidence. See Williamson I, 681 So. 2d at 694, 697. The Court also upheld the admissibility of an inmate's testimony that Williamson told him he had previously killed a child, as it was relevant to the credibility of Panoyan's testimony that his fear of Williamson was based in part on his knowledge that he had previously killed a baby. Id. at 695-96. Indeed, without referencing Dr. Ofshe at all, we concluded on direct appeal that "[t]he testimony recounted in this opinion in conjunction with the

- 11 -

circumstantial evidence presented at trial provides competent, substantial evidence of [Williamson's] guilt." Id. at 697.

Claims of prejudice under Strickland are routinely rejected where, as here, the totality of the evidence of guilt so dictates. See, e.g., Cox v. State, 966 So. 2d 337, 354 (Fla. 2007) (no prejudice for failing to object to medical examiner's statement that it was certainly possible that a person who had experienced injuries similar to those of the victim would recognize that he was in serious danger of dying, where there was copious other evidence through which the jury could have independently reached the conclusion that the victim was aware of his impending death); Cole v. State, 841 So. 2d 409, 418 (Fla. 2003) (no prejudice for failing to object to testimony bolstering rape victim's credibility where record contained "substantial other evidence corroborating [the victim's] testimony"—i.e., testimony that the defendant had confessed to the rape, and nails removed from the trees where the victim was tied up, with twine still attached to one of the nails); see also Catlett v. State, 627 So. 2d 558, 559 (Fla. 3d DCA 1993) (no prejudice for failing to request cautionary instruction on similar crimes evidence, where "there is no reasonable probability . . . [that] the result at trial would have been different— given the uncontradicted and unimpeached evidence of guilt adduced at trial against the defendant").

- 12 -

As to Panoyan's credibility, our decision in <u>Brown v. State</u>, 846 So. 2d 1114 (Fla. 2003), is instructive. In that case defendant Brown claimed that another person (McGuire) was the murderer, and that Brown's trial counsel was ineffective for failing to object to improper opinion bolstering when McGuire testified that his own testimony against Brown was truthful. <u>Id.</u> at 1119, 1122. The postconviction court denied relief on this and all of Brown's other claims after holding an evidentiary hearing, and this Court affirmed on appeal finding no prejudice under <u>Strickland</u> and holding in pertinent part:

> Of course, McGuire's testimony was preceded by the administration of an oath, by which McGuire attested that his testimony was truthful. Further, although McGuire was permitted to indicate that he was telling the truth, his testimony to that effect, as indicated in Brown's own brief, also stated that he was telling the truth to help himself. Furthermore, this testimony occurred on direct examination, after which trial counsel had the opportunity to cross-examine McGuire, and did so. Therefore, any harm done to Brown by McGuire's statement that he was telling the truth was countered by the fact that the jury was presented with evidence showing that McGuire had his own motives for testifying.

<u>Brown</u>, 846 So. 2d at 1123. Much the same can be said in the present case. In rejecting another of Williamson's ineffective assistance of counsel claims in his postconviction appeal, this Court held:

> In his third claim, Williamson asserts that his trial counsel was ineffective in failing to question Panoyan as to a prior contradictory statement Panoyan initially gave to police officers when Panoyan told them that he never saw the assailant without his mask and could not determine even the assailant's race. The postconviction court denied relief as follows:

- 13 -

Having reviewed the record, this Court agrees with the State that Capital Collateral Counsel initially mischaracterized Panoyan's November 1988 statements. Additionally, the jury was informed that Panoyan failed to identify the Defendant or his brother in Panoyan's initial statement to the police that evening, even though Panoyan provided an account of what happened at the Decker home. However, he gave inaccurate information as to the identity of the assailant. On direct examination, the State elicited from Panoyan that because he was afraid, he gave an inaccurate description to the police because of what he saw at the Decker home that evening and what Dana Williamson said he would do to Panoyan's family.

The record also reflects that defense counsel attacked Panoyan's credibility from the onset of the trial, starting with his opening statement arguing that "Panoyan was going to come in and tell the jury 'one hell of a story' to avoid the electric chair." Furthermore, defense counsel also reminded the jury that Panoyan was an original co-defendant in the case who never identified the Williamsons until three years after the crimes were committed and counsel also warned the jury that "the State had made a deal with the devil and that [the jury] should listen closely to Panoyan's account of the events which did not match . . . the statements of the other two innocent victims."

The instant record reflects that on Panoyan's cross examination, trial counsel did elicit from Panoyan that he was originally a defendant in the case, was arrested in May of 1990 and he was held without bond for eighteen months until he was "inexplicably" released on his own recognizance in November of 1992. Trial counsel also elicited testimony from Panoyan that he never requested a court order to be kept separate and apart from Williamson while both were held in the same jail during that year and one half (1/2) and that Panoyan maintained a "friendship" with Williamson, and he laughed and joked with Williamson in jail. Panoyan was also impeached as to his deposition testimony regarding how

- 14 -

he had spent his time waiting for Robert Decker to return to his home and Panoyan was also impeached about the cowboy hat worn by Dana Williamson.

     Contrary to the Defendant's assertions, this Court finds that trial counsel continued to attack Panoyan's credibility describing each of the conflicts in Panoyan's testimony and trial counsel was constantly reminding the jury that Panoyan was initially thought to have been guilty of the crimes.

We find no error in the postconviction trial court's conclusion that Williamson failed to demonstrate that his counsel was ineffective. As the postconviction court aptly pointed out, the jury was aware that Panoyan did not reveal any information about the assailant until three years after the crime, and defense counsel continuously attacked Panoyan's credibility throughout the trial. Since the record refutes Williamson's claim as to ineffective assistance of counsel, Williamson is not entitled to relief on this claim.

Williamson II, 994 So. 2d at 1007-08 (citation omitted). We likewise find that

Williamson is not entitled to relief on his present ineffective assistance of counsel

claims.

## CONCLUSION

In sum, we do not make a specific ruling on Strickland's performance

component, as it is clear that the prejudice component is not satisfied in this case

given the totality of the evidence of both Williamson's guilt and Panoyan's

credibility. In other words, even assuming trial counsel's alleged deficiencies, we

do not find that they have so affected the fairness and reliability of the proceeding

that confidence in the outcome is undermined. We accordingly affirm.

It is so ordered.

- 15 -

POLSTON, C.J., and LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, J., concurs in result.
PARIENTE, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND
IF FILED, DETERMINED.

PARIENTE, J., dissenting.

I dissent from the affirmance of the order denying postconviction relief

based on the majority's conclusion that there was a lack of prejudice for two

reasons. First, the majority erroneously focuses on a reasonable probability of a

different result when it concludes that "we do not find it reasonably probable that

the result would have been different even if Dr. Ofshe's testimony had been

entirely excluded." Majority op. at 10. Instead of examining whether confidence

in the jury's finding of guilt was undermined where the State presented an expert

witness who, unimpeached, bolstered the main witness, the majority improperly

focuses on other evidence of Williamson's guilt. Second, the majority's analysis

of prejudice fails to recognize the important effect that an expert witness can have

on a jury's determination, as was more fully explained in Justice Wells's opinion

in 2008. See Williamson v. State (Williamson II), 994 So. 2d 1000, 1017-18 (Fla.

2008) (Wells, J., specially concurring).

As to the first point regarding the majority's prejudice analysis that appears

to be outcome determinative, such a result runs contrary to our precedent that

- 16 -

expressly recognizes that under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), "the prejudice component [i]s not an outcome-determinative test and there [i]s no requirement to show that counsel's deficiency actually altered the outcome of the case." <u>Thompson v. State</u>, 990 So. 2d 482, 488 (Fla. 2008). Rather, "it is extremely important to emphasize that the prejudice prong of <u>Strickland</u> is an inquiry of whether there is 'a probability sufficient to undermine confidence in the outcome.' " <u>Walton v. State</u>, 77 So. 3d 639, 645 (Fla. 2011) (Pariente, J., specially concurring) (quoting <u>Strickland</u>, 466 U.S. at 694). In fact, the United States Supreme Court more recently reiterated that the defendant does not need to "show 'that counsel's deficient conduct more likely than not altered the outcome' of his . . . proceeding, but rather that he establish 'a probability sufficient to undermine confidence in [that] outcome.' " <u>Porter v. McCollum</u>, 130 S. Ct. 447, 455-56 (2009) (quoting <u>Strickland</u>, 466 U.S. at 694).

In contrast to ineffective assistance of counsel claims, the prejudice prong of a newly discovered evidence claim has a higher, outcome-determinative threshold because such a claim "presupposes that all the essential elements of a presumptively accurate and fair proceeding were present in the proceeding whose result is challenged." <u>Robinson v. State</u>, 770 So. 2d 1167, 1171 (Fla. 2000) (Anstead, J., specially concurring) (quoting <u>Strickland</u>, 466 U.S. at 693-94). Both the United States Supreme Court and this Court have recognized that because an

ineffective assistance claim is asserting the absence of one of the critical constitutional guarantees that assures that the result of the proceeding is reliable, "finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower" for ineffective assistance of counsel claims. Robinson v. State, 913 So. 2d 514, 522 n.7 (Fla. 2005) (quoting Strickland, 466 U.S. at 694). Accordingly, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." Id.; see also Lockhart v. Fretwell, 506 U.S. 364, 369 (1993) (holding that an ineffective assistance of counsel analysis "focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective").

As to the second issue regarding the majority's analysis of the evidence, I would conclude, as did Justice Wells in 2008, that the erroneous admission of Dr. Ofshe's expert testimony to bolster the main witness's testimony as to why he had delayed in identifying the defendant resulted in prejudice such that our confidence in the outcome of the guilt phase is undermined:

> I concur with the majority opinion in all parts except that I would reverse and remand for a new trial rather than an evidentiary hearing. The decision as to guilt in this case was essentially a decision as to the credibility of Mr. Panoyan. I conclude that the admission of the testimony of Dr. Ofshe was error and that the error

was prejudicial because Dr. Ofshe's testimony improperly bolstered the credibility of Mr. Panoyan.

I concur that counsel was ineffective for not requesting a Frye hearing before Dr. Ofshe was allowed to express his opinion to the jury. However, my analysis goes one step further. I would hold that Dr. Ofshe's opinion testimony was sufficiently similar to the profile and syndrome testimony we found to be inadmissible in Flanagan v. State, 625 So. 2d 827 (Fla. 1993), and Hadden v. State, 690 So. 2d 573 (Fla. 1997), that the opinion testimony should have been held inadmissible under Frye. I specifically point to Dr. Ofshe's stated methodology of reaching his conclusions by comparing Mr. Panoyan's history and the "pattern he displays with the pattern of someone who has been terrorized." In Hadden, we held that the appropriate standard of review of the Frye issue is de novo. I would here make the decision that Dr. Ofshe's testimony was not generally accepted in the relevant field.

I believe that the relevant field would be psychology. Dr. Ofshe's opinion was found to lack acceptance in the relevant scientific community in United States v. Fishman, 743 F. Supp. 713 (N.D. Cal. 1990). In Fishman, the Court stated that neither the American Psychological Association nor the American Sociological Association had endorsed the views of Dr. Ofshe on coercive persuasion. Id. at 717. An Illinois court affirmed the exclusion of Dr. Ofshe's testimony on the basis of Frye in People v. Rivera, 333 Ill. App. 3d 1092, 267 Ill. Dec. 557, 777 N.E.2d 360 (2001). I agree with these decisions.

Additionally, though not specifically argued as a basis for reversal of the trial court's denial of postconviction relief, I also find defense counsel was ineffective in not objecting to Dr. Ofshe's testimony on the basis that the opinions of Dr. Ofshe were not of such a nature as to require any special knowledge or experience for the jury to form conclusions as to the subject about which Dr. Ofshe opined. In Johnson v. State, 393 So. 2d 1069, 1072 (Fla. 1980), we noted that expert testimony should be excluded where the facts testified to are of such a nature as to not require any special knowledge or experience in order for the jury to form conclusions from the facts.

The essence of Dr. Ofshe's opinion was that based on Mr. Panoyan's testimony regarding what he witnessed during the Decker crimes and knowledge about Williamson's prior violent criminal act, Mr. Panoyan's earlier contrary statements to the police were made out

of fear that Williamson would harm his family. I conclude that the jury was capable of evaluating the credibility of Mr. Panoyan on the basis of its own knowledge and experience. If the jury believed Mr. Panoyan, the jury did not need expert opinion as to whether Mr. Panoyan would fear for his family. Dr. Ofshe only served the purpose of being a witness with academic credentials who bolstered the credibility of Mr. Panoyan with an opinion which was within the common experience of average jurors.

Furthermore, I conclude that under the circumstances of this case, Dr. Ofshe's testimony was prejudicial. The State relied upon Dr. Ofshe's testimony in its closing argument. <u>The value of hearing an expert vouch for Mr. Panoyan clearly could have tipped the scales in this tragic case. Dr. Ofshe's testimony undermines my confidence in the verdict</u>.

<u>Williamson II</u>, 994 So. 2d at 1017-18 (Wells, J., specially concurring).

Rather than focusing on the effect on the jury of having an expert vouch for the main witness's credibility and accordingly whether that error undermines confidence in the outcome, the majority relies on what evidence would have remained, such as the testimony of three jailhouse informants, which is notoriously unreliable. By focusing on whether the exclusion of Dr. Ofshe <u>would have</u> made a difference, the majority slips into the error of conflating the standard for a new trial with respect to newly discovered evidence claims (i.e., would have made a difference) with the more defense-friendly standard applicable to claims of ineffective assistance of counsel where we should focus in this case. As explained above, this relatively high standard of proof and prejudice for newly discovered evidence claims has been explicitly rejected by both this Court and the United

States Supreme Court as a standard for demonstrating prejudice in claims based upon the ineffective assistance of counsel.

In explaining the prejudice prong of the test, the United States Supreme Court in <u>Strickland</u> stated:

> Accordingly, the appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution, <u>United States v. Agurs</u>, 427 U.S. [97, 104 (1976)], and in the test for materiality of testimony made unavailable to the defense by Government deportation of a witness, <u>United States v. Valenzuela-Bernal</u>, <u>supra</u>, 458 U.S. [858, 872-74 (1982)]. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>A reasonable probability is a probability sufficient to undermine confidence in the outcome</u>.

<u>Strickland</u>, 466 U.S. at 694 (emphasis added).

In conclusion, defense counsel was either asleep at the switch or making an unreasonable decision when he did not challenge the testimony of Dr. Ofshe based on <u>Frye</u>. If he had made the proper challenge, either Dr. Ofshe's testimony would have been excluded at trial or there would have been a reversal on appeal since any error in admitting Dr. Ofshe's testimony clearly would not have been harmless beyond a reasonable doubt. Allowing the main witness's credibility to be bolstered by impermissible expert testimony certainly could have had an effect on the jury's ultimate decision to find the defendant guilty and clearly results in a proceeding where confidence in the outcome is undermined. In this case, the defense lawyer's

decision was a matter of life or death.  This case should be reversed for a new trial without the taint of the impermissible testimony of Dr. Ofshe.

For all these reasons, I dissent.

An Appeal from the Circuit Court in and for Broward County,
    Andrew L. Siegel, Judge - Case No. 92-15642 CFA

Kevin J. Kulik, Fort Lauderdale, Florida

    for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida and Lisa-Marie Lerner, Assistant Attorney General, West Palm Beach, Florida

    for Appellee